SOUTHLAND ROYALTY COMPANY ET AL. V.
HUMBLE OIL & REFINING COMPANY ET AL.

No. A-3358. Decided May 14, 1952.
Rehearing overruled July 2, 1952.
(249 S. W., 2d Series, 914.)

*R. M. Coleman* and *Ben G. Smith,* both of Fort Worth, and *Robertson, Jackson, Payne, Lancaster & Walker* and *A. W. Walker, Jr.,* all of Dallas, for petitioners.

The Court of Civil Appeals erred in refusing to hold that continuous production of oil by the lessee from the leased premises covered by a unitized oil and gas lease through wells located on one of three tracts of land comprising the unitized area had the effect of continuing the right of one of said lessors, who at the time of the execution of the unitized lease was owner of an undivided one-half of the minerals in the other two tracts for an unexpired term of 20 years and as long thereafter as oil and gas was produced therefrom, to share in the royalties payable upon production from the unitized leased premises as long as said unitized lease continued in force. Brown v. Smith, 141 Texas 425, 174 S.W. 2d 43; French v. George, 159 S.W. 2d 566; Lynch v. Davis, 79 W. Va. 437, 92 S. E. 427, L.R. A 1917F,566.

*G. R. Pate,* of Fort Worth, *Jones, Hardie, Grambling & Howell,* of El Paso, and *Felix A Raymer,* of Houston, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Petitioners Southland Royalty Company and Earl Sneed prevailed in the trial court in their suit against Humble Oil & Refining Company and others in which they sought a declaratory judgment, an accounting and a money judgment. The El Paso Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the respondents. One of the Justices dissented. 244 S.W. 2d 249.

The crucial question is involved in the controversy made the basis of the declaratory judgment phase of the case, petitioners' right to a money judgment hinging on a favorable determination of that question. The question arises out of the following undisputed factual background.

On April 2, 1925, L.P. Powell and wife, being then the owners of a section of land in the form of a square, conveyed one-half of the minerals in the South one-half (S½) (320 acres) to one J.H. Youngmeyer. On August 13, 1925, the Powells conveyed to Southland one-half of the minerals in the Northwest quarter (NW¼) (160 acres) and in the Northeast quarter (NE¼) of the Southwest quarter (SW¼) (40 acres), the grant being limited to a period of twenty years from the date of the deed "and as long thereafter as oil, gas or other minerals are produced from said land." In 1926 Southland sold a 1/32nd interest in the minerals in these tracts and this interest came in due course to be owned by Sneed. On June 22, 1932, the Powells, Youngmeyer, Southland, Sneed's predecessor in title and others owning an interest therein through Youngmeyer jointly executed to Gulf Production Company a general mineral lease on the 160 and 40 acre tracts in which Southland owned a mineral interest and on the north 50 acres of the West one-half (W½) of the Southwest quarter (SW¼).

On October 17, 1932, Powell and wife conveyed to Humble all mineral rights owned by them in the section, including all "reversionary" rights, one-half of which thereafter were conveyed by Humble to Continental Oil Company. To simplify our discussion we shall treat the facts as though at the time of this lease and at the time of suit the minerals in the 160 acre tract were owned one-half by the Powells and one-half by Southland, the minerals in the 40-acre tract were owned one-half by Youngmeyer and one-half by Southland and the minerals in the 50 acre tract were owned one-half by the Powells and one-half by Youngmeyer. Gulf assigned its lease of 3000 feet to Garrett M. Smith who completed two producing wells on the 50 acre tract in 1941. No wells were drilled on either the 160 acres tract or the 40 acre tract in which Southland owned a mineral interest until after the expiration of twenty years from the date of the deed from the Powells to Southland. A plat of the land will be found in the opinion of the Court of Civil Appeals (244 S.W. 2d 251).

Respondents have admitted that if the decisions in Parker v. Parker, Tex. Civ. App., 144 S.W. 2d 303 (writ refused) and French v. George, Tex. Civ. App., 159 S.W. 2d 566 (writ re-

fused) are to be followed the lease executed by the Powells, Southland and Youngmeyer had the effect of unitizing the land therein described for development and production purposes so that, at least for the twenty year period from the date of the Southland deed, Southland, Powell and Youngmeyer were entitled to share in the royalties derived from the two wells on the 50 acre tract in the proportion which their respective acreage interests bore to the total acreage leased. In accordance with this view Humble, as purchaser of the oil produced from the two wells, has paid to Southland its proportionate part of the royalties from the beginning of production to August 13, 1945. Humble contends, however, that the mineral estate owned by Southland terminated at the end of twenty years because there was no production of oil, gas or other minerals from a well located on the 200 acres in which Southland owned an interest; it denies that Southland is entitled to any further payments and contends that the portion of the royalties theretofore paid to Southland belonged, after the expiration of the twenty year period, to the owner of the reversion. Southland, on the other hand, contends that the limitation in the mineral deed has been modified or satisfied and that production from the wells on the 50 acre tract operates to continue in force Southland's one-half mineral interest in the 160 and the 40 acre tracts with the right to a proportionate participation in all royalties from wells on any of said tracts during the life of the lease. These rival contentions form the basis of the controversy which the trial court was asked to resolve by declaratory judgment.

The trial court resolved the controversy in favor of Southland, concluding that as between the lessors the lease to Gulf operated as a modification of the mineral deed from the Powells to Southland so that the grant in the deed was for a term of twenty years "and as long after the expiration of said 20-year period as oil, gas or other minerals is produced under said lease, irrespective of the location of production thereunder." The majority of the Court of Civil Appeals entertained the view that to agree with Southland and the trial court would be to extend or modify the grant in the mineral deed by implication, and this they declined to do.

We may take it as admitted that at the time of the execution thereof in 1925 the parties to the mineral deed intended by the provision that the grant should extend as long after the twenty year period as "oil, gas or other minerals are produced from *said land*" that the term of the grant should only be extended

beyond the twenty year term by production of oil, gas or other minerals from wells located on the land therein described. That appears to us to be the ordinary signification of the words in the deed and there is nothing in the record to show that the parties intended that they should have any other than their ordinary meaning. Even so, there was nothing to prevent the parties from later modifying their agreement so that the condition in the deed could be fulfilled by production from wells located on other lands. The important question is, did they do so? The answer can be found, we think, in the opinions of the courts in Parker v. Parker, supra; French v. George, supra; Veal v. Thomason, 138 Texas 341, 159 S.W. 2d 472 and Brown v. Smith, 141 Texas 425, 174 S.W. 2d 43.

1 It may be noted here that respondents suggest a re-examination of the Parker and George cases on the theory that the courts should not attribute to lessors jointly executing a general form lease, without more, an intent to pool or unitize their properties; that the language of the general form lease was never intended to effect or to operate as a pooling agreement. This argument is not entirely unappealing. The Texas rule in this respect is not of universal application. See 116 A.L.R. 1267, et seq. On the other hand, the law of the Parker and George cases have now become a rule of property in this state and "should not be changed in the absence of other controlling circumstanes, even though good reasons might be given for a different holding." Tanton et ux v. State National Bank of El Paso et al, 125 Texas 16, 79 S.W. 2d 833. No doubt many such leases have been executed and delivered by lessors and accepted by lessees in reliance on the holdings in the Parker and George cases that they effectively unitize the land included therein. It must therefore be held that when the parties executed the lease in 1932 they intended to create a unitized lease with all of the unusual incidents and legal consequences thereof.

2 Some of the legal consequences of a unitized lease as between the lessors on the one hand and the lessees on the other, in the absence of express agreement to the contrary, are as follows: the life of the lease is extended as to all included tracts beyond the primary term and for as long as oil, gas or other minerals are produced from any one of the tracts included in the lease; the commencement of a well on any one of the tracts operates to excuse the payment of delay rentals on all included tracts for the period stated in the lease; production from a well on any one of the tracts relieves the obligation to pay delay rentals, during production, on all included tracts; the lessee is relieved

of the usual obligation of an implied covenant for reasonable development of each tract separately; wells may be located without reference to property lines; the lessee is relieved of the obligation to drill off-set wells on other included tracts to prevent drainage by a well on one or more of such tracts. As between the lessors themselves, each relinquishes his right to have his own tract separately developed, his right to receive all of the royalties from production from wells on his own tract, and his right to have wells drilled on his tract off-setting other wells on the leased premises, and each gains the right to share proportionately in royalties from wells on the other included tracts. In short, the parties by the execution of a unitized lease agree that production of oil or gas from wells located on any tract included in the lease will be regarded during the life of the lease as production from each and all other tracts included therein. French v. George, supra.

The leased premises here could not have been unitized without the joinder of the Powells. By joining in the lease they necessarily agreed to the legal consequence that production from any of the tracts would be regarded as production from all other included tracts. More specifically, by joining in the lease the Powells agreed with the other parties thereto, including Southland, that production from the 50 acre tract would be regarded during the life of the lease as production from the 160 and the 40 acre tracts. There is no sound reason to hold that the agreement had that operative effect solely for the purposes heretofore noted; in the absence of express agreement it had that effect for all purposes. Thus the condition upon which the term of the grant in the mineral deed was to extend beyond the twenty year period was modified by agreement of the parties. It was modified to the extent that it could be fulfilled by production of oil, gas or other minerals from wells located on any of the three tracts included in the lease.

The conclusion we have reached is supported by the decisions of the Louisiana and Oklahoma courts in the cases of Ohio Oil Co. v. Kennedy, La. App., 28 So. 2d 504 and Peerless Oil & Gas Co. v. Tipken, 190 Okla. 396, 124 P. 2d 418. We do not regard as controlling the points of distinction observed by the Court of Civil Appeals.

Respondents suggest that the conclusion we have reached will discourage the making of unitization agreements; that owners of reversionary interests cannot enter into them without annulling their estates. To this we cannot agree. We know of

nothing in our holding to prevent reversionary owners—as there was nothing to prevent the Powells here—from protecting their estates by express stipulation.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered May 14, 1952.

Rehearing overruled July 2, 1952.