No. 50,398

MENNO A. FRIESEN and HILDA L. FRIESEN, *Appellees*, v. THE
FEDERAL LAND BANK OF WICHITA, *Appellant.*

(608 P.2d 915)

Opinion filed April 5, 1980.

*Richard Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause, and *Evan J. Olson,* of the same firm, and *Ray Brummett,* òf the Federal Land Bank of Wichita, were with him on the brief for the appellant.

*Donald D. Good,* of Wilson, Beard & Good, of Meade, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

McFARLAND, J.: This is an action brought by plaintiffs Menno A. and Hilda L. Friesen to quiet their title to an undivided one-fourth interest in the minerals under a certain 160-acre tract of land. The trial court held in favor of plaintiffs and defendant Federal Land Bank of Wichita appeals.

By a single warranty deed dated August 5, 1943, the Bank conveyed, in fee simple to Frank and Helen Classen, the following land: the Northwest Quarter of Section Eight (hereinafter referred to as Tract 1); the Northeast Quarter of Section Seven (hereinafter referred to as Tract 2); and the Southwest Quarter of Section Five (hereinafter referred to as Tract 3); all in Township Thirty-three South, Range Twenty-seven West of the 6th P.M., Meade County, Kansas. In that deed the Bank reserved a one-fourth mineral interest by the following reservation:

"Excepting and reserving unto party of the first part, its successors and assigns, an

undivided one-fourth of all oil, gas and other minerals and mineral rights in, upon and under the above described real estate for a period of twenty years from and after April 25, 1941, and so long thereafter as oil, gas and/or other minerals or any of them are produced therefrom, or the premises are being developed or operated  .  .  .  ."

On August 19, 1949, the Classens conveyed their interest in Tract 2 to A. J. Enns. On May 5, 1958, Enns conveyed his interest in Tract 2 to the plaintiff Friesens. On November 28, 1950, the Classens and the Bank executed oil and gas leases in favor of the Columbian Fuel Corporation for the minerals on Tract 1 and Tract 3. On August 26, 1958, the leases were amended to authorize the lessee to consolidate and unitize, the specific language being: "a producing well on any portion of the consolidated estate shall operate to continue the oil and gas leasehold estate hereby granted so long as gas is produced therefrom." On October 20, 1958, all leases in Section Eight were pooled to form a production unit embracing all of Section Eight. Since March 30, 1959, a well in the Southeast Quarter of Section Eight has been producing gas in paying quantities.

As of April 25, 1961, the end of the twenty-year reserved term on the three tracts originally conveyed by the Bank to the Classens, no gas or oil well had been drilled nor was one in the process of being drilled on any of the three tracts. Tract 2, the land in dispute, was not leased at any time during the primary reserved term. On October 22, 1964, the Bank executed a two-year gas and oil lease on Tract 2 in favor of Lee Banks, but no production resulted. On February 7, 1977, plaintiffs commenced the action herein to quiet their title to Tract 2. At trial the Bank introduced uncontroverted evidence that the well on the Southeast Quarter of Section Eight was physically draining gas from under Tract 1. The Bank contends this constitutes production from, and development and operation for production of, gas on each of the three tracts within the meaning of the language of the mineral reservation clause. The trial court made no finding as to whether or not gas was being produced from under Tract 1, as the same was immaterial to its determination. The trial court concluded that inasmuch as no well was physically located on Tract 2 at the conclusion of the term of the mineral reservation clause (April 25, 1961), then this court's decisions in *Smith v. Home Royalty Association, Inc.,* 209 Kan. 609, 498 P.2d 98 (1972); *Stratmann v. Stratmann,* 204 Kan. 658, 465 P.2d 938 (1970); and

*Dewell v. Federal Land Bank,* 191 Kan. 258, 380 P.2d 379 (1963), were dispositive of the litigation. The Bank contends the evidence of actual production of gas from under Tract 1 distinguishes the present factual situation from the earlier cases above cited and permits a different result to be reached.

In *Smith,* at 611, the issue was stated as follows:

"A conveys to B the oil, gas and other minerals under tract one for a term of twenty-one years and as long thereafter as oil, gas, or other minerals are produced from said land. During the definite term tract one is unitized with tract two for the production of oil and gas. Production is obtained from tract two within the definite term and production continued thereafter. In this factual situation, does production from tract two fulfill the production requirements in the original conveyance from A to B?"

This court concluded in Syl. ¶ 1:

"Where owner conveys a mineral interest which was to remain in force twenty-one years and as long thereafter as minerals are produced, and subsequently, successive owner and grantee of mineral interest separately execute lease permitting unitization, gas produced from other land in the unitized area does not fulfill the requirement in the deed that minerals be produced from said lands."

*Dewell* involved a mineral reservation clause identical to the present case. One-half the tract was included in a production unit. On another part of the unit a well was drilled with adequate production capabilities, but was shut in and not connected to a pipeline until after the expiration of the primary term. Shut-in royalties were paid before the expiration of the primary term. This court held in 191 Kan. 258, Syl.:

"A reservation in a warranty deed, excepting and reserving an undivided one-half interest in minerals for a term of twenty-years and so long thereafter as oil and gas or other minerals are produced therefrom or the premises are being developed or operated, creates a base or determinable fee in the minerals, and the reservation is not extended beyond the primary term by the lessee's payment of shut-in royalty."

In *Stratmann,* 204 Kan. at 663, the rule of *Dewell* was summarized as follows:

"In *Dewell* a term mineral interest under a half section of land was reserved in a deed. The reservation ran for a primary term of twenty years and as long thereafter as oil was produced from the premises. The interest was leased and the lease on this half section was unitized with leases on other land. Production was obtained on the other land. There were no producing wells drilled on the half section of land. The court held that production on the other land did not perpetuate the mineral interest on the half section beyond the primary term. To perpetuate the interest production had to come from the half section."

In *Panhandle Eastern Pipe Line Company v. Isaacson*, 255
F.2d 669 (10th Cir. 1958), it was held that a shut-in well on one
tract satisfied the mineral reservation clause as to both tracts, even
absent a pooling agreement or order. *Isaacson* involved Okla-
homa land. A similar result was reached in the Texas case of
*South. Royalty Co. v. Humble Oil & Ref. Co.*, 151 Texas 324, 249
S.W.2d 914 (1952), although there the lease permitted unitization.
In *Smith v. Home Royalty Association, Inc.*, 209 Kan. at 614,
these Oklahoma and Texas cases were discussed as follows:

"We are fully aware that the rules of law stated in *Dewell* and *Stratmann*, and here
reiterated, are contrary to the rule in Oklahoma and Texas as disclosed by
*Panhandle Eastern Pipeline Company v. Isaacson*, . . . and *South. Royalty
Co. v. Humble Oil & Ref. Co.* . . .

"The rationale of the Texas and Oklahoma cases is appealing; however, the
holdings in *Dewell* and *Stratmann* have become a rule of property in this state.
The rule should not be changed in the absence of other controlling circumstances,
even though logic might be effectively presented for a different holding."

We are not unmindful that the Kansas Court of Appeals
adopted, in substance, the Oklahoma and Texas view in *Somers v.
Harris Trust & Savings Bank*, 1 Kan. App. 2d 397, 566 P.2d 775
(1977), in concluding that where a portion of the land in an oil
and gas lease is committed to a unit, production elsewhere in the
unit extends the term of the entire lease. In so holding the Court
of Appeals reasoned, at p. 400:

"The rule is based on conservation and public policy. Its rationale starts with the
proposition that an oil and gas reservoir does not abide by man-made boundaries
(K.S.A. 55-1302 defines a 'pool' as ' . . . an underground accumulation of oil
and gas in a single and separate natural reservoir characterized by a single
pressure system so that production from one part of the pool affects the reservoir
pressure throughout its extent. . . .'); because of the nature of the oil and gas
pool and because of the growing need for conservation drilling units were
established; the units were tracts of sufficient size and shape that one well
properly located could sufficiently drain the oil and gas therefrom; unitization
makes possible the exploitation which would be possible if the land or subsurface
rights were in single ownership; reservoir energy and contents and physical
equipment are not wasted; since unit operations provide an efficient and less
expensive method of oil and gas recovery allowing lease termination as to outside
acreage would discourage operators from unitizing appropriate acreage (1 Myers,
The Law of Pooling and Unitization, 2d ed., Sec. 3.02, p. 73; Merrill, '*Unitization
Problems: The Position of the Lessor*', 1 Okla. L. Rev. 119 [1948])."

*Somers*, however, is readily distinguished from the case before
us, as *Somers* involved a lease rather than the mineral reserva-
tions in a deed. Further, all of the lessors and lessees in the unit

had expressly agreed that production anywhere in the unit would extend all leases in the unit. The plaintiff Friesens are not party to the leases involved herein or the unitization agreements relative to Section Eight.

We conclude that the trial court did not err in finding (1) that the evidence relative to the unit well physically draining gas from under Tract 1 was immaterial; and (2) that this court's prior determinations in *Smith v. Home Royalty Association, Inc.,* 209 Kan. 609; *Stratmann v. Stratmann,* 204 Kan. 658; and *Dewell v. Federal Land Bank,* 191 Kan. 258, were determinative of the issue herein.

The quiet title action herein relates only to Tract 2. Accordingly, we make no determination as to whether like or differing results would be reached as to Tracts 1 and 3, although we understand they were the subject of a companion case.

Other issues raised have been considered and found to be without merit.

The judgment is affirmed.

HERD, J., dissenting: I respectfully dissent. This case involves the interpretation of the habendum clause in a mineral reservation which states:

"Excepting and reserving unto party of the first part, its successors and assigns, an undivided one-fourth of all oil, gas and other minerals and mineral rights in, upon and under the above described real estate for a period of twenty years from and after April 25, 1941, and so long thereafter as oil, gas and/or other minerals or any of them are produced therefrom, or the premises are being developed or operated . . . ."

We have had previous occasions to construe parts of such a clause. In *Dewell v. Federal Land Bank,* 191 Kan. 258, 380 P.2d 379 (1963), the mineral reservation was an undivided one-half interest in the minerals under the North Half (N/2) of Section Thirty-two (32), Township Thirty (30) South, Range Forty-one (41) West, Stanton County for a term of 20 years and "so long thereafter" from May 13, 1939. The Northwest Quarter thereof was unitized for gas purposes in a lease with three other quarter sections in the area. Gas was discovered in paying quantities on one of the other quarters prior to the end of the primary term and an affidavit of production was filed. The well was completed, shut-in and not connected to the pipeline for a number of years. The owner of the mineral reservation collected shut-in royalty

payments during that time. In the meantime, the primary term expired. The question presented on appeal was whether shut-in royalty payments were the type of production contemplated in the habendum clause of the reservation which would perpetuate the mineral interest. This court held in *Dewell* at page 263:

"The payment of shut-in royalty is not the equivalent of 'production' or 'being developed or operated.' As the land was not being produced, developed or operated, the mineral interest was not perpetuated or extended beyond the primary term."

The case turned on that issue. A conclusion could be drawn that if the gas from the unit had been connected with the pipeline, rather than shut-in, prior to the end of the primary term, it would have perpetuated the mineral interest even though the actual well was off the reserved tract.

In *Stratmann v. Stratmann*, 204 Kan. 658, 465 P.2d 938 (1970), the surface to a 240 acre tract was partitioned leaving the mineral estate undivided. We held production from a well on the premises perpetuates the mineral interest under the entire 240 acres. In discussing the type of production needed to perpetuate a mineral interest, we cited *Dewell* at page 663 and stated:

"In *Dewell* a term mineral interest under a half section of land was reserved in a deed. The reservation ran for a primary term of twenty years and as long thereafter as oil was produced from the premises. The interest was leased and the lease on this half section was unitized with leases on other land. Production was obtained on the other land. There were no producing wells drilled on the half section of land. The court held that production on the other land did not perpetuate the mineral interest on the half section beyond the primary term. To perpetuate the interest production had to come from the half section."

Our summarization of *Dewell* went beyond the actual holding. The holding in *Dewell* did not establish that "production on the other land did not perpetuate the mineral interest on the half section beyond the primary term." Nor did the court in *Dewell* conclude that "[t]o perpetuate the interest production had to come from the half section." That rationale was arrived at in *Stratmann*, a rationale I view as dictum. The decision in *Dewell* turned solely on the shut-in royalty question and this court greatly expanded the holding in its summarization in *Stratmann*. The problem was further compounded in *Smith v. Home Royalty Association, Inc.*, 209 Kan. 609, 612, 498 P.2d 98 (1972), when the court quoted the following passage from *Dewell*:

"The owner of a defeasance mineral interest cannot change the conditions by which the interest is to continue beyond the primary term, by any provision in an oil and gas lease to which the landowner is not a party."

The court in *Smith* also quoted the passage included in *Stratmann* interpreting *Dewell.*

From those excerpts, the court drew the following erroneous conclusions in Syl. ¶ 1:

"Where owner conveys a mineral interest which was to remain in force twenty-one years and as long thereafter as minerals are produced, and subsequently, successive owner and grantee of mineral interest separately execute lease permitting unitization, gas produced from other land in the unitized area does not fulfill the requirement in the deed that minerals be produced from said lands."

This court went on to say at page 614:

"We are fully aware that the rules of law stated in *Dewell* and *Stratmann,* and here reiterated, are contrary to the rule in Oklahoma and Texas as disclosed by *Panhandle Eastern Pipeline Company v. Isaacson,* 255 F.2d 669 (10th Cir. 1958), and *South. Royalty Co. v. Humble Oil & Ref. Co.,* 151 Texas 324, 249 S.W.2d 914.

"The rationale of the Texas and Oklahoma cases is appealing; however, the holdings in *Dewell* and *Stratmann* have become a rule of property in this state. The rule should not be changed in the absence of other controlling circumstances, even though logic might be effectively presented for a difficult holding."

There are logical reasons for reversing *Smith.* Conservation rules and scientific considerations dictate that only one gas well per section can be drilled. The holding in *Smith* and the majority in this case leaves one who owns a defeasance mineral interest on a quarter section totally without protection. It converts an habendum clause to a meaningless provision. The mineral owner can not protect himself by requiring the lessee to locate the well site on his land because his interest is a minority interest in the section. By court construction we are impairing vested property rights with our tortured definition of oil and gas production. I recommend we adopt the rule established in Oklahoma, stated in *Panhandle Eastern Pipe Line Company v. Isaacson,* 255 F.2d 669 (10th Cir. 1958), that is, a "so long thereafter" clause be interpreted to mean that production, development or operations attributable to the premises will perpetuate the mineral interest for the life of the production.