Donald D. EDMONSTON, Plaintiff,

v.

The HOME STAKE OIL & GAS CORPORATION; the Home Stake Royalty Corporation; Sabine Corporation; John S. Zink, Jr.; H.D. Charislip; William E. Horkey; W.A. Baden; Ladd Petroleum Corporation; the Fourth National Bank of Tulsa, as Trustee of the Revocable Inter Vivos Trust of Edith Creed Binker; the R.G. Berry Company; the R.G. Berry, Jr., Revocable Trust; the Beverly B. Disney Trust; and Frederick A.F. Berry, Defendants.

No. 85–1171–K.

United States District Court, D. Kansas.

March 4, 1986.

---

Robert W. Christensen, Chapin & Penny, Medicine Lodge, Kan., for plaintiff.

Donald W. Bostwick, Adams, Jones, Robinson & Malone, Wichita, Kan., for defendants.

### MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This is a quiet title action concerning three-quarters of a section of land, the North Half (N/2) and Southeast Quarter (SE/4) of Section 31, in Kiowa County, Kansas. Defendants own a defeasible term mineral interest, an undivided ¼ interest in and to all oil, gas and other minerals in the entire three-quarters tract. Plaintiff Edmonston purchased title to the tract in 1979, succeeding to the original grantors' reversionary rights against the defendants. The dispositive issue is whether defendants' defeasible term mineral interests in the entire tract were extended by a Kansas Corporation Commission compulsory unitization order, which included only a portion of the tract, followed by off-tract production on the unitized acreage. Under Kansas case law and the Kansas Compulsory Unitization Act, that order and unitized production extended the term interests only in the included acreage. Defendants' term interests in the non-unitized N/2 expired when actual production on the entire tract

ceased in 1973. Their remaining interests in the unitized SE/4 expired when the unitized area terminated in 1984. Plaintiff is now entitled to judgment against the defendants, quieting title to the entire tract in his name.

■ The parties have stipulated to the controlling facts (R. 10). Defendants' interest originated in a written instrument designated "Sale of Oil and Gas Royalty", dated June 12, 1956, which provided the interest was to continue "for a period of the next ten years from June 11, 1956 and as long thereafter as oil and/or gas is produced from these premises or the property is being developed or operated." Notwithstanding its designation as a "Royalty", that instrument was a mineral deed granting a base or determinable fee in the oil, gas and other minerals in place. *Baker v. Hugoton Production Co.*, 182 Kan. 210, 212, 320 P.2d 772 (1958). The parties agree defendants' interest arising from that instrument is a defeasible term mineral interest.

In 1962, within the 10–year primary term of defendants' interest, the Lewis "C" Well was drilled and completed on the SE/4. The well produced oil and/or gas in paying quantities until plugged and abandoned on April 7, 1973. The parties agree the development, production and operation of the Lewis "C" extended beyond the primary term defendants' term mineral interest in the entire tract, the SE/4 and the N/2 of Section 31. *Baker v. Hugoton Production Co.*, 182 Kan. 210, Syl. ¶ 1, 320 P.2d 772 (1958).

Pursuant to the Kansas Compulsory Unitization Act, K.S.A. 55–1301 *et seq.*, on May 24, 1968 the Kansas Corporation Commission (KCC) ordered unitization of the Nichols Pool in Kiowa County. The unitized area included the SE/4, but not the N/2, of Section 31. The KCC order incorporated by express reference the plan of unitization agreed upon by the necessary 75% of the royalty, term and working interest owners of the Nichols Pool. (R. 10, Ex. C, p. 3.) Paragraph 3.4 of that plan provided operations or production anywhere on the unit shall be considered as operations or production in each tract within the unit, the effect being to "continue in effect each lease, term royalty, or other agreement as to all lands covered thereby just as if such operations had been conducted and a well had been drilled on and was producing from each tract." (R. 10, p. 4.) During operation of the Nichols Pool from 1968 through 1984, actual production was obtained within the unitized area but none was ever physically attempted or obtained within the surface boundaries of the SE/4 of Section 31. The KCC terminated the Nichols Unit effective November 20, 1984.

After the Lewis "C" Well on the SE/4 was plugged in 1973, no producing oil well or gas well was physically located on the N/2 of Section 31. On September 27, 1983, pursuant to various oil and gas leases from plaintiff's predecessor in interest, and the defendants or their predecessors in interest, Vincent Oil Corporation began drilling operations on the Edmonston No. 1 Well, spudded in the NE/4 of Section 31. The Edmonston No. 1 was subsequently completed as a gas well capable of producing in paying quantities. However, the well was shut in because the operator was unable to immediately obtain a gas contract and market for sale of gas from the well. The lessors received shut-in royalty payments attributable to the N/2. In the summer of 1985 the operator secured a market and pipeline for sale of gas from the Edmonston No. 1 Well, and began production.

At no time after the Lewis "C" Well was plugged on April 7, 1973, has any producing oil well or gas well ever been physically located or drilled upon the SE/4 of Section 31.

The parties have distilled the issues in this case to two:

1. Did the statutory unitization of the Nichols Pool under the Kansas Compulsory Unitization Act extend defendants' defeasible term mineral interests through November 20, 1984, as to all the subject property even though only the SE/4 was included in the unit?

2. Did the commencement of the Edmonston No. 1 Well on September 27, 1983 on the NE/4 of the subject property, and the discovery of gas in paying quantities on December 6, 1983 coupled with diligent and continuous efforts to secure production and a market, which culminated in the production and sale of gas on June 27, 1985, operate to extend the term mineral interest?

The first question, because it is resolved in plaintiff's favor, is the dispositive issue.

Plaintiff relies on the Kansas Supreme Court's opinion in *Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, 617 P.2d 1255 (1980), for his contention the unitization of the SE/4 coupled with production elsewhere on the unitized land did not extend defendants' term mineral interests in the non-unitized N/2. *Classen* and its companion case, *Friesen v. Federal Land Bank of Wichita*, 227 Kan. 522, 608 P.2d 915 (1980), were based on a set of facts similar to those before us. Those cases involved three tracts of land: the NW/4 of Section 8 (Tract 1); the NE/4 of Section 7 (Tract 2); and the SW/4 of Section 5 (Tract 3). Defendant Land Bank owned a defeasible term mineral interest in all three tracts. Tract 1 was voluntarily unitized with the remainder of Section 8, followed by off-tract unitized production in that section. Plaintiff Friesen challenged defendants' term mineral interest in Tract 2. *Friesen*, 227 Kan. 522–23, 608 P.2d 915. Classen challenged defendants' interests in the unitized Tract 1 and the non-unitized Tract 3. *Classen*, 228 Kan. at 427–28, 617 P.2d 1255.

In *Friesen*, defendant argued it retained its term mineral interest in Tract 2. Relying on uncontroverted evidence the pooled well on unitized Section 8 was physically draining gas from under Tract 1, the Bank contended that constituted production from, and development and operation for production of, gas on each of the three tracts within the meaning of the mineral reservation clause in the deed. That deed preserved the Bank's interest for 20 years "and so long thereafter as oil, gas and/or

other minerals or any of them are produced therefrom, or the premises are being developed or operated...." The trial court held the absence of a well physically located on Tract 2 at the conclusion of the 20–year term of the mineral reservation clause extinguished the Bank's term mineral interest at the end of that period. 227 Kan. at 523–24.

The Kansas Supreme Court affirmed. Its decision was based on a line of cases holding a term mineral interest is perpetuated beyond the primary term only by production actually obtained from the land at issue. 227 Kan. at 523–24, 608 P.2d 915, *citing Smith v. Home Royalty Association, Inc.*, 209 Kan. 609, 498 P.2d 98 (1972); *Stratmann v. Stratmann*, 204 Kan. 658, 465 P.2d 938 (1970); and *Dewell v. Federal Land Bank*, 191 Kan. 258, 380 P.2d 379 (1963). The *Friesen* court acknowledged Oklahoma and Texas have a different rule, under which production anywhere on the unit extends term mineral interests when any part of such interests lie within and are subject to unitized operations. *Panhandle Eastern Pipe Line Company v. Isaacson*, 255 F.2d 669 (10th Cir.1958) (Oklahoma law); *South. Royalty Co. v. Humble Oil & Ref. Co.*, 151 Texas 324, 249 S.W.2d 914 (1952). Nevertheless, the court adhered to its position the *Dewell*, *Stratmann* and *Smith* law had become a rule of property in Kansas, not to be changed absent " 'other controlling circumstances.' " 227 Kan. at 525, 608 P.2d 915, quoting *Smith, supra* 209 Kan. at 614, 498 P.2d 915. The court also distinguished the facts of *Friesen* from the Court of Appeals' decision in *Somers v. Harris Trust & Savings Bank*, 1 Kan.App.2d 397, 566 P.2d 775 (1977), holding that where a portion of the land in an oil and gas lease is committed to a unit, production elsewhere in the unit extends the term of the entire lease. The Supreme Court concluded *Somers* involved a lease, not mineral reservations in a deed which implicate real property rights. Further, where the *Somers* lessors had expressly agreed production anywhere in the unit would extend all leases in the unit, the Friesen reversioners were not party to the

leases or unitization agreements covering Section 8, and the court was unwilling to imply any intent the reversioners agreed the term interest would be extended into its secondary term. 227 Kan. at 525–26. Justice Herd dissented in *Friesen,* urging adoption of the Oklahoma rule a " 'so long thereafter' clause be interpreted to mean that production, development or operations *attributable to* the premises will perpetuate the mineral interest for the life of the production." 227 Kan. at 528, 608 P.2d 915 (emphasis added).

Plaintiff Classen challenged the Land Bank's term mineral interests in both Tract 1, voluntarily pooled with the remainder of Section 8, and the nonpooled Tract 3. Apparently relying on the *Dewell, Stratmann,* and *Smith* line of cases the trial court held that notwithstanding the pooling of Tract 1, defendant's term mineral interests expired as to both Tracts 1 and 3 because no actual production was attempted or obtained thereon. *Classen* 228 Kan. at 430, 617 P.2d 1255. The Supreme Court affirmed in part and reversed in part, holding that "[w]henever a defeasible term mineral interest is voluntarily placed in a unit for the production of gas or oil and production is obtained on other land in the unit during the primary term, such production will extend the term mineral interest *to the extent of the land and mineral interests included within the producing unit.*" 228 Kan. 426, 617 P.2d 1255, Syl. ¶ 5 (emphasis added). Thus, the off-tract pooled production obtained on Section 3 perpetuated defendant's term mineral interests in the pooled Tract 1, but not in the excluded Tract 3. *Id.,* Syl. ¶ 6.

The *Classen* analysis began with the generally accepted rule underlying *Dewell, Stratmann* and *Smith:* "absent agreement to the contrary, a term mineral interest cannot be changed or altered by the terms of an oil and gas lease or a unitization agreement entered into between the term mineral owner and a third party lessee or by the holder of the reversionary interest and a third party lessee." 228 Kan. at 434, 617 P.2d 1255. The court re-evaluated that rule in light of conserva-

tion and public policy considerations effected by pooling arrangements, and concluded they presented "other controlling circumstances" warranting a limited departure from the rule. Those objectives justified adoption of a modified rule that whenever a term mineral interest is voluntarily placed in a unit for production of gas or oil, and production is obtained on other land within the unit during the primary term, it will extend the term mineral interest *to the extent of the land and mineral interests included within the producing unit.* 228 Kan. at 435, 617 P.2d 1255. In effect the court adopted a rule of divisibility, under which a term mineral interest owner's voluntary pooling of a portion of the land in which he possesses the interest severs that land and interest from that not pooled; only the former are perpetuated beyond the primary term by off-tract production on the pooled acreage. In *Classen* the court again acknowledged Texas and Oklahoma have a different rule. 228 Kan. at 436, 617 P.2d 1255.

*Friesen* and *Classen* concerned voluntary pooling of term mineral interests not agreed to by the reversioners. Summarizing these cases commentators note that in Kansas, when the owner of a reversionary interest fails to join or ratify a voluntary pooling agreement binding the term mineral interests, his reversionary interest rights in the excluded portion of the tract are unaffected by off-tract production within the unit. In such a case the term mineral interests in the non-unitized portion of the tract will expire at the end of the primary term. *Friesen,* at least, is correct because "the owner of the future interest should not be deprived of that interest by 'constructive production' under a unit agreement which the future interest owner has not joined or authorized." 6 Williams and Meyers, *Oil and Gas Law* § 961.3 n. 1 (1985).

The present case is obviously different from *Friesen* and *Classen* insofar as it concerns the effect of compulsory unitization rather than voluntary pooling. "Pooling" refers to consolidation of multiple

tracts to form a drilling or spacing unit, while "unitization" refers to consolidation of tracts for joint operation of all or part of a reservoir. *Classen,* 228 Kan. at 428, 617 P.2d 1255. Unitization is a deliberate effort to consolidate all, or a sufficiently high percentage, of the royalty and working interests in a pool to permit reservoir engineers to plan operation of the pool as the natural energy mechanism unit it is. It means taking production at the locations and rates where most efficient, without disruption of the scheme by the legal rights inhering in the competing properties comprising the unit. 5 Summers, *Oil and Gas* § 951 (1966). Seizing on this distinction defendants argue *Classen* does not control the question whether their term mineral interests in the entire tract have been extended beyond the primary term by virtue of the KCC compulsory unitization order. In that sense they are correct, but that argument does not lead to the conclusion they desire.

■ To have any effect upon term interests, a compulsory order must be valid. *Newkirk v. Bigard,* 125 Ill.App.3d 454, 80 Ill. Dec. 791, 466 N.E.2d 243 (1984). In the present case there is no contention the KCC order exceeded that agency's power or was otherwise invalid at its inception.

The next inquiry concerns the provisions of the state compulsory pooling or unitization statute. In such a statute the legislature may exercise its constitutional power to modify the relationship of the owners of a term interest and the owners of a reversionary interest as the legislature deems necessary to effectuate the purposes of the act. Concerning the effect of compulsory unitization on excluded acreage, the question is one of construction: does the statute have the effect of making the term interest divisible between the included and excluded acreage? 6 Williams and Meyers, *Oil and Gas Law* § 961.1 (1985).

For example, the Oklahoma compulsory unitization statute provides:

Property rights, leases, contracts, and all other rights and obligations shall be regarded as amended and modified to the extent necessary to conform to the provisions and requirements of this act and to any valid and applicable plan of unitization or order of the commission made and adopted pursuant thereto, but otherwise to remain in full force and effect....

52 Okla.Stat.Ann. 1969 § 287.9. Consistent with prior Oklahoma law that production anywhere on a unit extends term mineral interests in both included and excluded acreage when any part of the term interests lie within and are subject to unitized operations, Oklahoma courts construing that state's compulsory unitization statute have held it does *not* have the effect of making the term interest divisible between the included and excluded acreage. Production from an Oklahoma compulsory pooled unit which includes one of several tracts subject to a defeasible term royalty deed preserves the defeasible term interest into its secondary term, both as to acreage included in the unit and acreage excluded from the unit. *Fox v. Feltz,* 697 P.2d 543 (Okla.App.1984).

We agree with the following observations regarding the flaws in the Oklahoma court's interpretation and application of its compulsory unitization statute:

As to compulsory poolings and unitizations, no definition [of their legal consequences] should be attempted beyond noting that these have the consequences imposed by law through valid exercises of the police power, and *these consequences should be held to the minimum* to accomplish the police power purposes of prevention of waste and protection of correlative rights. The courts have not always observed this limitation upon compulsory consequences, however, and notably in Oklahoma have carried compulsory unitization consequences upon property interests beyond anything fairly inferrable from the statutes, or needed to accomplish the police power objectives of prevention of waste and protection of correlative rights.

5 Summers, *Oil and Gas* § 952 (emphasis added). Further,

As a general proposition ... compulsory poolings and unitizations are [not] supposed to have any greater effect on other relationships than necessary to accomplish the operational purpose of pooled production, ... because the statutory structure should be interpreted in a manner consistent with the limited purpose of the state's police power.... [T]he proposition suggested exists only as a matter of principle and [has been] varied ... in the case of compulsory pooled units, by court interpretations which erroneously fail to recognize the proper limits of compulsory processes.

Summers, *id.* § 962.

In this case the question is whether the Kansas Compulsory Unitization Act, K.S.A. 55–1301 *et seq.*, modifies the parties' rights as to both included and excluded acreage, or whether it has the effect of making the term interest divisible between them. K.S.A. 55–1308 addresses the effect of a compulsory unitization order on existing property rights:

Property rights, leases, contracts and other rights or obligations shall be regarded as amended and modified *only to the extent necessary* to conform to the provisions and requirements of this act and to any valid order of the commission providing for the unit operation of a pool or a part thereof, *but otherwise shall remain in full force and effect. ...*

(Emphasis added.) That language is somewhat more strictly worded against modification of property rights than its Oklahoma counterpart, *supra.* In any event, the analytical error in an overlybroad interpretation of such language has already been discussed. K.S.A. 55–1306 contains language further supporting strictly limited modification of the parties' property rights:

All operations, including, but not limited to, the commencement, drilling, or operation of a well upon any part of the unit area shall be deemed for all purposes the conduct of such operations upon each separately owned tract *in the unit area* by the several owners thereof. The portion of the unit production allocated to a separately owned tract *in a unit area* shall, when produced, be deemed, for all purposes, to have been actually produced from such tract by a well drilled thereon. Operations conducted pursuant to an order of the commission providing for unit operations shall constitute a fulfillment of all the express or implied obligations of each lease or contract covering lands *in the unit area to the extent that compliance with such obligations cannot be had because of the order of the commission.*

\* \* \* \* \* \*

*Except to the extent that the parties affected so agree no order providing for unit operations shall be construed to result in a transfer of all or any part of the title of any person to the oil and gas rights in any tract in the unit area.*
....

(Emphasis added.) Finally, we note that although these portions of the Kansas Compulsory Unitization Act were enacted in 1967 (Kan.Sess.Laws 1967, ch. 299, §§ 6, 8), the legislature has not altered these provisions following the Supreme Court's 1980 adoption of the divisibility rule in *Classen.*

The Kansas Supreme Court has already addressed the limited scope and effect of the Nichols Pool Unitization Agreement underlying the KCC order at issue in this case. In *Parkin v. Kansas Corporation Commission,* 234 Kan. 994, 1007, 677 P.2d 991 (1984), the court said:

The original Plan of Unitization [of the Nichols Pool] was not a contract between *all* of the royalty and mineral interest owners and *all* of the working interest owners. Approximately 19% of the royalty and mineral interest owners and a smaller portion of the working interest owners did not agree to that plan. Unitization was forced upon those people in 1968 under the original proceeding conducted pursuant to K.S.A. 55–1301 *et seq.* The Plan of Unitization, however fair in its provisions as to the workings and operation of the unit, is not a contract which may be enforced against those in-

terest holders who did not agree to its terms and who were included in the unit against their will. The unit in this case is not one created by contract; it is one imposed by the Corporation Commission under authority of law.

(Emphasis in original.)

Admittedly, the *Classen* divisibility rule in voluntary pooling agreements has been questioned by some commentators. *See* 5 Summers, *Oil and Gas* § 962 n. 32 (1985 Supp.). But in the context of this case, involving compulsory unitization, the reasons for division of the parties' rights are far more compelling in view of the purposes of the Kansas Compulsory Unitization Act and the limited degree to which modification of the parties' rights is necessary to effect the Nichols Pool unitization. Had the KCC needed oil or gas production from under the N/2 of Section 31 and corresponding modification of the property rights thereon, presumably that land would have been included in the unitized area. It was not. To now construe the Nichols Pool unitization order as modifying the parties' property rights in both the unitized SE/4 and the excluded N/2 would impart to it consequences far beyond those necessary to fulfill its purposes, even under a liberal construction.

■ The language of K.S.A. 55–1306 and –1308 alone compels this conclusion. Defendants make no persuasive showing modification of the parties' rights in the excluded N/2 is necessary "to conform to the provisions and requirements of [the Compulsory Unitization] act and to [the] valid order of the commission...." Absent that showing, the statute mandates those rights and obligations remain in full force and effect. Although the unitized operations and production on the Nichols Pool constituted fulfillment of the express production obligation of defendants' contract as to the unitized SE/4, that obligation as to the excluded N/2 was not one as to which defendants' compliance was foreclosed by virtue of the KCC order.

Further, notwithstanding *Classen*'s critics, that case is the law in Kansas. After *Classen*, owners of a defeasible term mineral interest cannot unilaterally modify a reversioner's rights in excluded acreage by voluntarily pooling only a portion of the land in which they possess term interests. Where, as in this case, there is no compelling showing of an independent need for modification of the reversioner's rights in excluded acreage, it would defy logic to hold those rights *are* somehow modified by a compulsory unitization order upon which all of the term interest owners themselves never agreed.

■ The Court concludes the Kansas Compulsory Unitization Act does have the effect of making the parties' interests divisible between the SE/4, the acreage included in the Nichols Unit, and the N/2, the acreage excluded from that unit. Operations and production on the Nichols Unit were effective only to fulfill defendants' production obligation, and extend their term interest, in the unitized SE/4. Their term mineral interest in the excluded N/2 terminated when actual production from the three-quarters tract of Section 31, from the Lewis "C" Well, ceased in 1973.

■ After April 7, 1973, defendants' term interest existed only in the unitized SE/4. Regarding the second question posed by the parties, the 1983 commencement of the Edmonston No. 1 Well on the N/2 could not operate to revive defendants' expired term interests in that acreage. *See Wagner v. Sunray Mid-Continent Oil Co.,* 182 Kan. 81, 318 P.2d 1039 (1958). Defendants' term interest in the SE/4 expired upon termination of the Nichols Unit effective November 20, 1984. Plaintiff Edmonston is now the owner of the entire mineral estate in the three quarters of Section 31.

IT IS ACCORDINGLY ORDERED this 4 day of March, 1986, judgment is granted in plaintiff's favor declaring him the owner in fee simple, and entitled to the quiet and peaceful possession, of the minerals in and under the North Half (N/2) and the Southeast Quarter (SE/4) of Section 31, Kiowa County, Kansas. The parties' respective requests for costs are denied.