No. 61,759

DONALD D. EDMONSTON, *Appellee*, v. THE HOME STAKE OIL & GAS CORPORATION; THE HOME STAKE ROYALTY CORPORATION; SABINE CORPORATION; JOHN S. ZINK, JR.; H. D. CHARISLIP; WILLIAM E. HORKEY, W. A. BADEN; LADD PETROLEUM CORPORATION; THE FOURTH NATIONAL BANK OF TULSA, as Trustee of the Revocable Inter Vivos Trust of Edith Creed Binker; THE R. G. BERRY COMPANY; THE R. G. BERRY, JR., Revocable Trust; THE BEVERLY B. DISNEY TRUST; and FREDERICK A. F. BERRY, *Appellants*.

(762 P.2d 176)

Opinion filed June 14, 1988.

*Donald W. Bostwick*, of Adams, Jones, Robinson and Malone, Chartered, of Wichita, argued the cause and was on the brief for appellants.

*Robert W. Christensen*, of Chapin & Penny, of Medicine Lodge, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

HOLMES, J.: This case is before the Kansas Supreme Court on a certified question from the United States Court of Appeals for the Tenth Circuit pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.* The question as presented by the certifying court is:

"When a term mineral interest in several tracts has been conveyed by a single instrument and one of those tracts has been unitized under the Kansas Compulsory Unitization Act, Kan. Stat. Ann. 55-1301 *et seq.*, is the entire mineral interest

extended by the unitized production or only the interest in the tract included within the unit?"

As pointed out by the Court of Appeals, the facts are stated in the United States District Court opinion. *Edmonston v. Home Stake Oil & Gas Corp.*, 629 F. Supp. 620 (D. Kan. 1986). For convenience, a plat or map of the area involved is attached as an appendix to this opinion. The Hon. Patrick F. Kelly, speaking for the United States District Court for the District of Kansas, stated the facts which are pertinent to the question before this court as follows:

"This is a quiet title action concerning three-quarters of a section of land, the North Half (N/2) and Southeast Quarter (SE/4) of Section 31, [Township 29 South, Range 18 West] in Kiowa County, Kansas. Defendants own a defeasible term mineral interest, an undivided ¼ interest in and to all oil, gas and other minerals in the entire three-quarters tract. Plaintiff Edmonston purchased title to the tract in 1979, succeeding to the original grantors' reversionary rights against the defendants. The dispositive issue is whether defendants' defeasible term mineral interests in the entire tract were extended by a Kansas Corporation Commission compulsory unitization order, which included only a portion of the tract, followed by off-tract production on the unitized acreage. . . .

". . . Defendants' interest originated in a written instrument designated 'Sale of Oil and Gas Royalty', dated June 12, 1956, which provided the interest was to continue 'for a period of the next ten years from June 11, 1956 and as long thereafter as oil and/or gas is produced from these premises or the property is being developed or operated.' Notwithstanding its designation as a 'Royalty', that instrument was a mineral deed granting a base or determinable fee in the oil, gas and other minerals in place. *Baker v. Hugoton Production Co.*, 182 Kan. 210, 212, 320 P.2d 772 (1958). The parties agree defendants' interest arising from that instrument is a defeasible term mineral interest.

"In 1962, within the 10-year primary term of defendants' interest, the Lewis 'C' Well was drilled and completed on the SE/4. The well produced oil and/or gas in paying quantities until plugged and abandoned on April 7, 1973. The parties agree the development, production and operation of the Lewis 'C' extended beyond the primary term defendants' term mineral interest in the entire tract, the SE/4 and the N/2 of Section 31. *Baker v. Hugoton Production Co.*, 182 Kan. 210, Syl. ¶ 1, 320 P.2d 772 (1958).

"Pursuant to the Kansas Compulsory Unitization Act, K.S.A. 55-1301 *et seq.*, on May 24, 1968 the Kansas Corporation Commission (KCC) ordered unitization of the Nichols Pool in Kiowa County. The unitized area included the SE/4, but not the N/2, of Section 31. The KCC order incorporated by express reference the plan of unitization agreed upon by the necessary 75% of the royalty, term and working interest owners of the Nichols Pool. (R. 10, Ex. C, p.3.) Paragraph 3.4 of that plan provided operations or production anywhere on the unit shall be considered as operations or production in each tract within the unit, the effect

being to 'continue in effect each lease, term royalty, or other agreement as to all lands covered thereby just as if such operations had been conducted and a well had been drilled on and was producing from each tract.'. . . The KCC terminated the Nichols Unit effective November 20, 1984.

"After the Lewis 'C' Well on the SE/4 was plugged in 1973, no producing oil well or gas well was physically located on the N/2 of Section 31. . . .

"At no time after the Lewis 'C' Well was plugged on April 7, 1973, has any producing oil well or gas well ever been physically located or drilled upon the SE/4 of Section 31." 629 F. Supp. at 621-22.

The district court held that the statutory unitization of the Nichols Pool extended the defendants' defeasible term mineral interests only as to the SE/4 which was included in the unit. We agree.

Although not pertinent to the question now before us, we point out that there were two original mineral deeds, each covering a one-fourth term mineral interest. Plaintiffs in this action sought to quiet title to one-half of the minerals and not just one-fourth. As both instruments were identical and executed on the same date, the opinion of Judge Kelly applies equally to each conveyance and the reversionary interests thereunder.

At the outset we note the parties and the trial court correctly characterized the instruments before the court as mineral deeds which conveyed a base or determinable fee in the oil and gas in place. *Wilson v. Holm,* 164 Kan. 229, 234, 188 P.2d 899 (1948).

In *Wilson v. Holm,* a quiet title action brought by a reversioner, this court set out certain rules pertaining to defeasible term mineral interests of the type at issue here. The court stated that "the ultimate test as to whether an estate created by a deed has terminated depends entirely upon its own provisions," and that the "deed must be construed in accord with the intent and purpose of the parties after it has been examined in its entirety." 164 Kan. at 239.

This court has consistently followed the rule, asserted in *Wilson v. Holm,* that the instrument which creates a defeasible term mineral interest is controlling on the question of whether the interest has terminated. See *Parkin v. Kansas Corporation Comm'n,* 234 Kan. 994, 677 P.2d 991 (1984); *Short v. Cline,* 234 Kan. 670, 676 P.2d 76 (1984); *Classen v. Federal Land Bank of Wichita,* 228 Kan. 426, 617 P.2d 1255 (1980); *Friesen v. Federal Land Bank of Wichita,* 227 Kan. 522, 608 P.2d 915 (1980);

*Klippel v. Beinar,* 222 Kan. 681, 567 P.2d 867 (1977); *Smith v. Home Royalty Association, Inc.,* 209 Kan. 609, 498 P.2d 98 (1972); *Stratmann v. Stratmann,* 204 Kan. 658, 465 P.2d 938 (1970); *Dewell v. Federal Land Bank,* 191 Kan. 258, 380 P.2d 379 (1963); *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 368 P.2d 19 (1962); *Baker v. Hugoton Production Co.,* 182 Kan. 210, 320 P.2d 772 (1958); and *Wagner v. Sunray Mid-Continent Oil Co.,* 182 Kan. 81, 318 P.2d 1039 (1957). While the foregoing cases cover a multitude of factual situations and establish numerous principles of law, one common thread that permeates the opinions is that the extent and duration of a term mineral interest is ordinarily controlled by the provisions of the document creating the interest. The cases also reflect that to perpetuate a term mineral interest beyond the primary term contained in the original document, there must be production from or operations on a portion of the property contained in the original grant. It is also the rule in Kansas that where defeasible term mineral interests are voluntarily unitized with other property, production from the other property within the unit will operate to continue the term mineral interests only as to property actually included within the unit. *Classen v. Federal Land Bank of Wichita,* 228 Kan. 426. There is nothing in the original deed in this case which would extend the term mineral interest in the N/2 of the section by off-tract production from the Nichols Unit. Insofar as the deeds in this case are concerned, the term mineral interest in the N/2 terminated when the actual production from the SE/4 terminated.

Does the fact that the Nichols Unit was created pursuant to the Kansas compulsory unitization law, K.S.A. 55-1301 *et seq.,* rather than by voluntary agreement alter the foregoing general principles under the facts of this case? We think not.

The plaintiffs rely heavily upon *Classen v. Federal Land Bank of Wichita,* 228 Kan. 426, and the applicable unitization statutes. In considering *Classen,* it is necessary to also consider the companion case of *Friesen v. Federal Land Bank of Wichita,* 227 Kan. 522. *Friesen* was a quiet title action against the holder of a reserved undivided ¼ interest in minerals under a quarter section of land. The Federal Land Bank by deed conveyed three quarter sections, referred to in the opinion as Tracts 1, 2, and 3,

subject to a reservation of an undivided one-fourth interest in the oil, gas, and other minerals for a period of 20 years "and so long thereafter as oil, gas and/or other minerals or any of them are produced therefrom, or the premises are being developed or operated." 227 Kan. at 522-23. The Friesens subsequently became the owners of Tract 2 by a deed from the original grantees of the bank. At the end of the primary term, no actual drilling had occurred on any of the three tracts, but Tract 1 had been pooled by its owners with other property to form a production unit, and production had commenced from the other property within the unit. Evidence was presented that the unit well was physically draining gas from under Tract 1, and the defendant bank contended that this was production from the tract sufficient to extend the term of the mineral interest as to all three of the tracts within the meaning of the mineral reservation clause. The court reviewed several of our earlier cases and held that the mineral reservation as to Tract 2 had expired at the end of the primary term.

In *Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, the Classens, the original grantees in the conveyance from the bank, brought suit to quiet title to their claimed reversionary interest as to Tracts 1 and 3 of the same property as described in *Friesen*. The defendant bank claimed its mineral interest by virtue of the same mineral reservation described in *Friesen*, arguing again that unit production outside Tract 1 but allegedly draining gas from under Tract 1 extended its mineral interest not only as to Tract 1 but also as to Tract 3. The Classens argued that, to extend the mineral interest beyond the primary term, production must actually come from a well located on one of the three tracts or operation or development must physically occur upon one of the tracts. As Tract 1 had been voluntarily placed in the unit by the parties, the court held that production from the unit continued the Federal Land Bank mineral interest in that tract. However, as in *Friesen*, we held that production from the unit did not perpetuate the mineral interest in Tract 3 which was not included in the unit. One authority has succinctly summarized our holdings in *Friesen* and *Classen* as follows:

"A defeasible term mineral interest cannot be extended unless there is a well physically located on the land which is subject to the grant. However, if a portion

of the land is effectively pooled or unitized, the duration of the grant will be extended as to acreage which actually participates in production from the pooled or unitized operation. Acreage included in the grant, but not participating in unit production, will not be held by pooled or unitized operations. [citing *Classen*]." Pierce, Kansas Oil and Gas Handbook § 9.21 p. 9-20 (1986).

We are of the opinion our prior decisions, including *Classen*, are controlling unless the Kansas compulsory unitization law requires a different conclusion.

K.S.A. 55-1303 sets forth the requisites for statutory unitization by the Kansas Corporation Commission. The statute requires, *inter alia*, that the applicant submit a proposed plan of unitization along with a copy of a proposed operating plan. There is no contention in this case that there was not a valid unitization order issued by the Kansas Corporation Commission. The order which was issued approved the proposed plan of unitization and the proposed operating plan. The plan of unitization provided in part:

"3.4 Continuation of Leases and Term Royalties. Operations, including drilling operations, conducted with respect to the Unitized Formation on any part of the Unit Area, or production from any part of the Unitized Formation, shall be considered as operations upon or production from each Tract, and such operations or production shall constitute a compliance with and continue in effect each lease, term royalty, or other agreement as to all lands covered thereby just as if such operations had been conducted and a well had been drilled on and was producing from each Tract."

The term "Tract" is defined by ¶ 1.8 of the plan as follows:

"1.8 Tract means each parcel of land described as such and given a Tract number in Exhibit A."

The SE/4 of Section 31 is listed as Tract # 20 in Exhibit A attached to the plan.

K.S.A. 55-1306 and -1308 are also relevant to our decision in this case. K.S.A. 55-1308 provides in part:

"*Property rights*, leases, contracts and other rights or obligations *shall be regarded as amended and modified only to the extent necessary to conform to the provisions and requirements of this act* and to any valid order of the commission providing for the unit operation of a pool or a part thereof, but otherwise shall remain in full force and effect." (Emphasis added.)

K.S.A. 55-1306 provides in pertinent part:

"All operations, including, but not limited to, the commencement, drilling, or

operation of a well upon any part of the unit area shall be deemed for all purposes the conduct of such operations upon each separately owned tract in the unit area by the several owners thereof. The portion of the unit production allocated to a separately owned tract in a unit area shall, when produced, be deemed, for all purposes, to have been actually produced from such tract by a well drilled thereon. Operations conducted pursuant to an order of the commission providing for unit operations shall constitute a fulfillment of all the express or implied obligations of each lease or contract covering lands in the unit area to the extent that compliance with such obligations cannot be had because of the order of the commission.

. . . .

"Except to the extent that the parties affected so agree no order providing for unit operations shall be construed to result in a transfer of all or any part of the title of any person to the oil and gas rights in any tract in the unit area."

We think it is clear that compelled unitization pursuant to the statutes must be limited in its scope to the accomplishment of the objectives of the unit formed. Statutory unitization or compulsory unitization is done pursuant to the police power of the state and the power of the Kansas Corporation Commission to prevent waste, conserve oil and gas, and protect the correlative rights of persons entitled to share in the production of oil and gas. K.S.A. 55-1301. Under such circumstances the statutes should be strictly construed and limited so as to minimize disruption of interests in property not included in the unit. As specifically provided in K.S.A. 55-1308, property rights can only be amended and modified to the extent necessary to meet statutory requirements and the order providing for the operation of the unit. If, as we held in *Classen*, a voluntary pooling or unitization will not operate to extend a term mineral interest as to any property not included in the unit, a compelled statutory unitization certainly will not do so. Here the N/2 of the section was not a part of the unit, was not affected by the off-tract production from the unit, and did not benefit from such production. Defendants were free to pursue development and production from the N/2 regardless of what took place on the Nichols Unit, but apparently elected not to do so.

Our unitization statutes have been before this court on only one prior occasion, and that case involved this very same Nichols Unit. See *Parkin v. Kansas Corporation Comm'n*, 234 Kan. 994. In *Parkin*, Justice Miller discussed at length the background and provisions of the statutes. *Parkin* involved the dissolution or

termination of the unit, which the Corporation Commission and the district court denied based upon their determination that the plan of unitization constituted a contract. This court made it clear that compulsory units are created pursuant to statutory authority and are not contractual in nature.

The appellants rely primarily on ¶ 3.4 of the plan of unitization and on cases from other jurisdictions which follow the rule that off-tract unit production will perpetuate a term mineral interest, even as to non-unitized acreage. See *Panhandle Eastern Pipe Line Company v. Isaacson*, 255 F.2d 669 (10th Cir. 1958); *Fox v. Feltz*, 697 P.2d 543 (Okla. App. 1984) (reaffirms rule stated in *Panhandle Eastern*); *South. Royalty Co. v. Humble Oil & Ref. Co.*, 151 Tex. 324, 249 S.W.2d 914 (1952). This court has declined to follow *Panhandle Eastern* and *South. Royalty Co.* in numerous cases, including *Classen*, 228 Kan. 426; *Friesen*, 227 Kan. at 525-26, and *Smith v. Home Royalty Association, Inc.*, 209 Kan. 609, 614, 498 P.2d 98 (1972). Appellants also assert a different interpretation of the statutes and contend that the language in ¶ 3.4 of the plan of unitization requires the extension of the term mineral interest in the N/2 of Section 31, even though it is not in the unit, and even though there is no longer any actual production from a well on the SE/4 which is in the unit. We do not find their arguments persuasive.

We conclude the decision of the federal district court is correct. As stated earlier, the certified question is:

"When a term mineral interest in several tracts has been conveyed by a single instrument and one of those tracts has been unitized under the Kansas Compulsory Unitization Act, Kan. Stat. Ann. 55-1301 *et seq.*, is the entire mineral interest extended by the unitized production or only the interest in the tract included within the unit?"

We hold that under the facts submitted only the interest in the tract included within the unit is extended by the unitized production when there is no actual production from a well upon the tract within the unit.

HERD, J., dissenting: I respectfully dissent. The instrument of conveyance controls the rights of the parties. The instrument in issue provides for a primary term of ten years on the 480-acre tract with a secondary term so long thereafter as oil, gas, or other minerals are produced from the tract. Production on any part of

the tract perpetuates the deed on the whole 480 acres. This is the mineral estate created by the owner-grantor. All purchasers of fractional interests from the original sale of minerals acquired their interest under the grantor's arrangement.

Hydrocarbons may be produced from a common reservoir in many ways. The traditional method is for each owner to drill a well into the reservoir and produce his own acreage, using offset wells to protect his interests. This method is inefficient and often wasteful. The most efficient and equitable method of producing a reservoir is by either voluntary or mandatory pooling and unitizing. Under this method, a scientific calculation is made to determine what number and spacing of wells will most efficiently drain the pool. The proceeds from such production is then divided proportionately among the owners.

Off-premises production attributed to certain real estate is nevertheless production of that real estate's share of the supply and is just as valid as when the well is on the premises. The granting instrument here provides that production of minerals prevents the deed from terminating. There was production on these premises during the primary term of the mineral deed. The deed was not divisible. It should not be divided by this court.

The majority is affirming the mistake we made in *Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, 617 P.2d 1255 (1980). By these opinions, we allow property to be taken from owners without just compensation.

NICHOLS UNIT
KIOWA COUNTY, KANSAS
EXHIBIT "B."

SCALE

APPENDIX