**ARCHER COUNTY, Texas, et al.,**
**Appellants,**

v.

**C. R. WEBB et al., Appellees.**

No. 5320.

Court of Civil Appeals of Texas.

El Paso.

June 24, 1959.

Rehearing Denied July 15, 1959.

Tom Sealy, F. H. Pannill, Stubbeman, McRae, Sealy & Laughlin, Midland, Paul O. Wylie, Archer City, for appellants.

Rayburn L. Foster and Harry D. Turner, Bartlesville, Okl., Carl W. Jones and Joe D. Meroney, Midland, for cross-appellee, Phillips Petroleum Co.

Houston S. Smith, Ozona, Neill, Blanks, Lewis & Logan, San Angelo, for appellees.

ABBOTT, Justice.

In the trial court there were two sets of plaintiffs and one defendant. They appeared as follows:

| *Plaintiffs* | *Defendants* |
|---|---|
| Fred Turner, Jr. and Phillips Petroleum Co. | C. R. Webb, et al., Trustees of the Shannon Estate, |

suing in trespass to try title and to continue existence of an oil and gas lease on 202 acres in League 3, Crockett County, Texas;

and,

| *Plaintiffs* | *Defendants* |
|---|---|
| Archer County, Texas; Fred Turner, Jr. and Juliette Miller Turner, as Trustees for Dorothy Turner Scarbauer; and Fredda Fay Durham, as her separate property, | C. R. Webb, et al., Trustees of the Shannon Estate, |

suing in trespass to try title and for declaratory relief to establish continued existence of non-participating royalty in all of League 3, Crockett County, Texas.

———◆———

The facts leading up to this suit appear in the stipulation of facts, and are shown to be:

1. On October 1, 1883, the State of Texas granted to Archer County, Texas, one league of land known as Survey 3, located in Crockett County, Texas, containing 4428 acres. By mesne conveyances, title to said tract passed to Margaret A. Shannon, and she, acting individually and in her capacity as independent executrix and sole beneficiary of the will and estate of J. M. Shannon, deceased, executed to James E. Ferguson a certain deed, dated May 7, 1929. Said deed conveyed an undivided one-half interest in and to all oil or gas royalty that might be paid on the aforesaid lands, or any part thereof, limited to fifteen years, or so long thereafter as oil and gas should be produced from said premises, or any part thereof, in commercially paying quantities.

2. By deed dated May 7, 1929, James E. Ferguson conveyed to Archer County, Texas all the interest acquired by him by virtue of the aforementioned deed.

3. Margaret A. Shannon died December 13, 1931 and by will, subject only to the interest deeded to James E. Ferguson, left the balance of her interest in League 3 to the Trustees of the Shannon West Texas Memorial Hospital. The Trustees aforementioned, as lessors, executed and delivered to R. G. Carr, as lessee, a certain oil, gas and mineral lease covering 202 acres out of League 3, April 24, 1940. This lease was for a primary term of ten years and as long thereafter as oil, gas or other minerals were produced from said land, and said land was described by metes and bounds. This lease also provided for shut-in royalty payments of $50.00 per year per well where gas, from a well producing gas only, was not sold or used, and such payment was to be considered as production.

4. On June 15, 1940, R. G. Carr assigned the above lease in its entirety to Phillips Petroleum Company, and on June 28, 1940, Phillips Petroleum Company assigned an undivided one-half interest in 40 acres of such lease to Fred Turner, Jr.

5. Delay rentals were duly and timely paid under the above lease, such

as to maintain the same in force and effect until April 24, 1944, the last rental payment so made being the one due on or before April 24, 1943.

6. On July 6, 1943, a well was commenced by Turner and Phillips in the Northeast part of the Northwest 40 acres of the 202 acres covered by the oil and gas lease, and such well was completed as a potential producer on September 24, 1943, at a depth of 2160 feet.

7. On May 8, 1944 (the day after the termination of the primary term of the royalty deed), Archer County, Texas, acting through its commissioners' court, executed and delivered to Fred Turner, Jr., and Juliette Miller Turner, Trustees for Fredda Fay Turner Durham and Dorothy Turner Scarbauer, a deed conveying an undivided one-half of the title and interest of the grantors to League 3, Archer County School Lands, such deed referring to the original royalty deed from Margaret A. Shannon to James E. Ferguson, dated May 7, 1929.

8. On March 9, 1956, Fred Turner, Jr. and Juliette Miller Turner executed and delivered to Dorothy Turner Scarbauer a deed conveying an undivided one-half of the title and interest conveyed by Archer County on May 8, 1944 to them, and again referring to the original deed from Shannon to Ferguson, dated May 7, 1929.

9. On September 29, 1943, for himself and Phillips Petroleum Company, Fred Turner, Jr. tendered to Shannon Estate Trustees $25.00 for the shut-in gas well royalty payment under the lease, said tender being refused. A check for $50.00 was then tendered and accepted. Checks were tendered for the same purpose by Turner in September 1944, September 1945, September 1946, August 1947, July 1948, August 1949, August 1950, August 1951, August 1952, July 1953, August 1954,

July 1955, August 1956, July 1957; all being refused.

Phillips also made tenders September 1944, September 1945, September 1946, September 1947, September 1948, September 1949, September 1950, September 1951, September 1952, September 1953, September 1954, September 1955, September 1956, August 1957; all being refused.

It was also stipulated that Archer County, Texas, Fred Turner, Jr., and Juliette Miller Turner, Trustees for Fredda Fay Turner Durham and Dorothy Turner Scarbauer, and from Fredda Fay Turner Durham, individually, that the shut-in gas well rentals or royalties were paid during this period.

10. From September 15, 1948 through January 5, 1949, gas was produced and sold to Amerada Petroleum Corporation, and payment for that production was tendered to the Trustees of the Shannon Estate, and refused.

The balance of the stipulation of facts deals with the attempted tender of the shut-in payments to the Central National Bank and the return of said tenders by the bank upon instruction by the Trustees of the Shannon Estate; and to the fact that neither Fred Turner, Jr. nor Phillips Petroleum Company made any payments, tenders or offers to pay to the Trustees of the Shannon Memorial Hospital any other sums by way of annual rentals, royalty or shut-in gas well royalty, other than those listed above.

With the foregoing stipulated facts and the supporting exhibits, plaintiffs below made a motion for summary judgment, as did defendants below, and on the 7th day of February 1958 the trial court rendered its judgment finding, in substance:

1. This to be a proper case for summary judgment;

2. That the oil and gas lease on the 202 acres was a valid and subsisting

lease and had been maintained in effect by proper and timely payment of delay rentals and production of gas by payment of shut-in gas well royalty at the time and in the manner and amount required and set out in said oil and gas lease;

3. That the royalty interest created and conveyed by deed from Margaret A. Shannon, dated May 7, 1929, had been maintained in force and effect insofar, and only insofar, as it covered or pertained to the 202-acre tract;

4. That the royalty interest conveyed and created by deed from Margaret A. Shannon, dated May 7, 1929 had terminated and expired by its own terms as to all of League 3, Archer County School Lands, Crockett County, Texas, save and except only the 202-acre tract covered by the oil and gas lease to R. G. Carr;

5. Fred Turner, Jr. and Phillips Petroleum Company were entitled to a summary judgment for title and possession of the oil and gas leasehold estate, and declared the validity of the oil and gas lease on the 202-acre tract;

6. Archer County, Texas, Dorothy Turner Scarbauer, and Fredda Fay Turner Durham were entitled to a summary judgment establishing and declaring to be valid and subsisting for title and possession to royalty estates and interests created by deed from Margaret A. Shannon, dated May 7, 1929, insofar as it covered and pertained to the 202-acre tract;

7. Trustees of the Shannon Memorial Hospital were entitled to a summary judgment denying plaintiffs, Archer County, Texas, Dorothy Turner Scarbauer and Fredda Fay Turner Durham, any relief or any recovery of an interest in any portion of League 3, Archer County School Lands, Crockett County, Texas, save and except only the 202-acre tract.

From this judgment both plaintiffs and defendants have perfected their appeal.

Appellants Archer County, et al., bring three points of error:

### "Point No. 1.

"The trial court erred in limiting Appellants' royalty interest to the 202-acre tract covered by the Turner-Phillips lease because the royalty deed from Margaret A. Shannon plainly said that production from League 3 'or any part thereof' would keep the royalty in force so long as such production continued.

### "Point No. 2.

"The trial court erred in rendering Summary Judgment for Appellees and refusing to grant Summary Judgment for Appellants as to Appellants' royalty interest in the lands outside the 202 acres in the Turner-Phillips lease because the transcript shows there is no genuine fact issue affecting the continuance of Appellants' royalty and Appellants are entitled to recover and establish their royalty in all of League 3 as a matter of law.

### "Point No. 3.

"Where a royalty deed is made for a term of fifteen years 'and so long thereafter as oil or gas shall be produced from said premises or any part thereof in commercially paying quantities' production from any part of the land covered by the deed continues the interest as to all of the land, and the subsequent execution by the Grantor of an oil and gas lease covering a part only of such land does not diminish the rights of the Grantee nor sever or separate the land into two or more tracts for purposes of keeping the royalty in effect by production."

Appellee-appellant, C. R. Webb, et al., brings one counterpoint and two points of error:

"Shannon Appellees' First Counter-Point.

"Except as set forth in Appellees' First Point of Error, the court did not err in holding the royalty deed had terminated as to all of League 3 except the 202 acres covered by the oil and gas lease. (In reply to Appellants' Points of Error Nos. 1, 2 and 3.)

"Shannon Appellees' First Point of Error.

"The court erred in holding that the royalty deed is still in force and effect as to the 202 acres of land covered by the oil and gas lease.

"Shannon Appellees' Second Point of Error.

"The Court erred in holding that the oil and gas lease is still in force and effect."

Cross-appellees Fred Turner, Jr. and Phillips Petroleum Company, bring three counter-points:

"Counterpoint No. 1.

"The trial court correctly held the Turner-Phillips lease was still in effect because the undisputed facts show that production was had by making shut-in gas well payments in the full amount continuously since completion of the gas well on the lease.

"Counterpoint No. 2.

"The trial court correctly held the Turner-Phillips lease still to be in effect because the undisputed facts show that no event had occurred which would constitute a special limitation on the leasehold estate.

"Counterpoint No. 3.

"The trial court correctly held that the Turner-Phillips lease was still in effect because the repudiation of the lease by the Shannon Trustees in 1945 dispensed with the necessity of making any further tenders, payments or operations under the lease."

All the points of error and counterpoints can be condensed into the three vital questions:

1. Is the oil and gas lease to the 202 acres still in effect as a result of the gas wells capable of producing, and where shut-in royalty payments have been tendered under the terms of the lease?

2. If the oil and gas lease to the 202 acres is still in effect, have the shut-in gas payments extended the primary term royalty deed to the 202 acres?

3. If the oil and gas lease is still in effect, have the shut-in gas payments extended the primary term royalty deed to the entire League 3 (4428 acres)?

We believe, in answer to our question 1, that the oil and gas lease is still in effect. Gas in commercial quantities was found during the primary term of the lease. Following the language of the lease, tender was made for the shut-in royalty payments, when no market was available, as substitute production. Some of the parties who were interested in the mineral estate accepted the shut-in payments; the defendants refused. There was no critical date established for such payment in the written lease, and it appears that plaintiffs Turner and Phillips Petroleum Company attempted to tender such payments on or before the anniversary date of the completion of the well. We believe that, after the many tenders which were made and refused, Turner and Phillips Petroleum Company were entitled to believe such tender to be a useless act under the holding of Athans v. Jones, Tex.Civ.App., 277 S.W.2d 192.

Our question 2 creates an entirely different problem. Margaret A. Shannon gave a royalty deed for one-half the mineral interest to League 3 for a primary term of fifteen years, plus production peri-

od. There is no provision for any substitute for production in commercially paying quantities. Margaret A. Shannon's Trustees then gave an oil and gas lease to a described 202 acres out of that League 3. This oil and gas lease contained a shut-in gas payment as a substitute for actual production. This lease was adequately described by metes and bounds, and the intention of the parties is clearly shown, in that a method of keeping the lease alive after the primary term was provided by the shut-in gas payments. At the time the oil and gas lease was made, the Shannon Trustees had full authority to convey all or any part of the League in question, or to enlarge the mineral deed originally given in May, 1929. They did not do so. We believe the court, in Sellers v. Breidenbach, Tex.Civ.App., 300 S.W.2d 178, 179, correctly states the difference in production as required by the royalty deed in the case at bar, and substitute production as required in the oil and gas lease, when it said:

"The parties could have placed in their royalty deed a shut-in gas well provision, if they had desired to do so, but we find no such provision in this deed. They could have provided that the royalty deed would be continued in effect if a well capable of producing was completed on the premises, if they had so desired, but they did not do so. 'Paying Production' does not mean the completion of a well capable of producing, it means a well which is actually producing on the significant date." Also see Holchak v. Clark, Tex.Civ.App., 284 S.W.2d 399, 400.

In Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914, 916, and Spradley v. Finley, Tex., 302 S.W.2d 409, cited by appellant, all the owners—term mineral interests and reversionary—joined in a single lease of adjoining lands as a whole. The Supreme Court said that "when the parties executed the lease in 1932 they intended to create a unitized lease with all the usual incidents and legal consequences thereof", and that

production on any of the unitized lands operated to extend the 20-year term specified in the mineral deeds. In other words, these unitization cases were based on agreement. In the case at bar, there has been no such agreement, and there is no pooling or unitization under the holdings of the Texas courts.

■ We believe, with the foregoing facts in mind, that the trial court erred in holding that the mineral deed, as to the 202 acres in the oil and gas lease, was extended beyond the primary term of fifteen years, and that this mineral interest should have reverted to the Shannon Trustees.

Our third question has been partially answered in the foregoing paragraphs. The recent case of Union Producing Co. v. Scott, 173 F.Supp. 361, decided in the U. S. District Court for the Southern District of Texas, Brownville Division, June 18, 1958, and opinion adopted by the U. S. Court of Appeals for the Fifth Circuit, Scott v. Union Producing Co., 1959, 267 F.2d 469, gives us a clear and concise statement of what we believe to be the law of Texas. In the above case the court said [173 F.Supp. 364]:

"* * * it is the mineral deed, not the lease, that should have contained a provision securing to the term mineral owners the benefit of a shut-in gas well provision."

This case thoroughly discusses the "Agency Theory" and the theory that the termination date was modified by the lease and its ratification by the owners of the term mineral interests, and we believe those holdings to be correct as applied to the case at bar.

It is accordingly our opinion that the portion of the trial court's judgment dealing with the royalty interest under the 202 acres must be reversed and rendered, and that C. R. Webb, Olin Blanks, Claude Gibbs, Jr., J. Ransom, L. B. Horton, C. A. Freeze, and W. P. Barnes, Trustees of

the Margaret A. Shannon Estate and the Shannon West Texas Memorial Hospital Estate, are the present owners of the rights reserved to and remaining in Margaret A. Shannon in her deed dated May 7, 1929, said rights having reverted to them by operation of law, May 7, 1944.

The balance of the trial court's judgment is affirmed.

LANGDON, C. J., not sitting.