No. 43,150

CARL V. DEWELL, *Appellee*, v. THE FEDERAL LAND BANK OF WICHITA, Wichita, Kansas, *Appellant*.

(380 P. 2d 379)

Opinion filed April 6, 1963.

*Edward H. Jamison*, of Wichita, argued the cause, and *Max L. Dice*, of Johnson, and *William G. Plested, Jr.*, of Wichita, were with him on the briefs for the appellant.

*J. S. Brollier*, of Hugoton, argued the cause, and *Paul A. Wolf*, of Hugoton, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This case stems from a controversy as to the defeasance of a determinable fee, in oil and gas and other minerals, created by a reservation in a warranty deed.

The present owner of the land, Carl V. Dewell, appellee, brought the action to quiet his title against the Federal Land Bank of Wichita, appellant, which claims the mineral interest. The plaintiff prevailed in the court below and the defendant Bank has appealed.

The case was submitted to the district court on an agreed statement of facts which may be summarized thus:

On August 12, 1941, the appellant, owner of the fee simple title to the North Half (N½) of Section Thirty-two (32), Township Thirty (30) South, Range Forty-one (41) West, in Stanton County, Kansas, conveyed such land by warranty deed to the Federal Farm Mortgage Corporation, excepting and reserving an undivided one-half interest in the minerals for a term of twenty years from and after May 13, 1939, and "so long thereafter as oil, gas and/or other minerals or any of them are produced therefrom, or the premises

are being developed or operated." The stipulation of facts gives the commencement date of the reservation as March 13, 1939. It appears, however, this was an inadvertent error and the court properly found the date to be May 13, 1939. On April 19, 1943, the Federal Farm Mortgage Corporation conveyed the real estate to appellee subject to and excepting the mineral interest retained by the appellant as above set forth.

On September 15, 1947, the appellee and his wife executed and delivered to Paul W. Fleeger an oil and gas lease covering their one-half mineral interest in the above described land for a primary term of ten years with the usual contingency for perpetuation by production, a shut-in royalty clause, and a provision for unitization. On September 17, 1947, the appellant executed and delivered to Paul W. Fleeger an oil and gas lease covering its one-half mineral interest in the above described land for a primary term of ten years with the usual contingency for perpetuation by production, a shut-in royalty clause, and a provision for unitization.

On August 26, 1957, the Superior Oil Company, having acquired an interest in the oil and gas leases, executed a declaration that it unitized the Southeast Quarter (SE¼) and the Northwest Quarter (NW¼) of Section Twenty-nine (29), the Northwest Quarter (NW ¼) of Section Thirty-three (33), and the Northwest Quarter (NW¼) of Section Thirty-two (32), all in Township Thirty (30) South, Range Forty-one (41) West, Stanton County, Kansas, for development and production of gas, casing head gas, gas distillate and condensate. On August 27, 1957, William Gruenerwald, being then the owner of the remaining interest in the oil and gas leases, executed a similar declaration.

On or about August 11, 1957, actual drilling operations were commenced on the Southeast Quarter (SE¼) of Section Twenty-nine (29), Township Thirty (30) South, Range Forty-one (41) West, being a component part of the gas drilling unit. The drilling was continued until on or about September 12, 1957, on which date the well was completed as a gas well capable of producing natural gas in paying quantities and having an open flow of gas upon completion of approximately 2200 MCF. On January 22, 1959, the Superior Oil Company executed an affidavit of production which affidavit was filed for record on January 30, 1959.

Shut-in royalty payments were made by the Superior Oil Company to, and were accepted by, appellee and appellant in Sep-

tember of each year, 1957, 1958 and 1959, in the amount of $160.00, except for the year 1959 appellee was paid $300.00.

The gas well which was completed on September 12, 1957, was shut-in and not connected to a pipeline until on or about January 11, 1960, on which date Colorado Interstate Gas Company commenced the purchase of gas from the well and had continued such purchase to the time this action was commenced.

It is conceded that the reserved mineral interest would have expired by its terms on May 14, 1959, in the absence of production. This leaves for our determination, the question as to (1) whether the discovery on the unitized acreage and the payment of shut-in royalty was the equivalent of "being produced or developed" as the term is used in the mineral reservation for the purpose of extending the primary term, and (2) if so, does the payment of shut-in royalty on the unitized acreage also extend the primary term on the Northeast Quarter (NE¼) of Section Thirty-two (32) which was not included in the drilling unit? If the first question is answered in the negative, no further consideration need be given the second question, as the reservation on the Northeast Quarter (NE¼) of Section Thirty-two (32), which has not included in the drilling unit, would have expired as a matter of course.

This court has held in a long line of decisions that the conveyance or reservation of minerals in place by deed for a primary term and so long thereafter as oil or gas is produced or the premises are being developed creates a base or determinable fee.

In *Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899, we said:

"Before consideration of controverted issues it should be stated that in this state a deed, conveying oil and gas in place for a fixed term of years and so long thereafter as either or both are produced in paying quantities, creates a base or determinable fee and that title to the estate so created vests immediately upon the execution and delivery of such an instrument but remains defeasible in the event of cessation of production (*Richards v. Shearer,* 145 Kan. 88, 91, 92, 64 P. 2d 56)." (pp. 234 and 235.)

See, also, *Fry v. Dewees,* 151 Kan. 488, 99 P. 2d 844, and on rehearing *Baker v. Hugoton Production Co.,* 182 Kan. 210, 212, 320 P. 2d 772.

Mineral reservations are to be construed in accordance with the intent and purpose of the parties as gathered from an examination of the entire instrument. If there is ambiguity in the language of the reservation, it should be construed most strictly against

the grantor in the deed since it was in complete control at the time the reservation was made. Where the language of the instrument is clear and unambiguous, rules of construction are unnecessary.

"The necessity of applying rules of construction depend upon whether the terms of the reservation are clear and unambiguous, and if no ambiguity is apparent there is no need for the application of any rule to aid in their interpretation. . . ." (*Shepard, Executrix v. John Hancock Mutual Life Ins. Co.*, 189 Kan. 125, 130, 368 P. 2d 19.)

Appellant contends that the mineral reservation and the separate oil and gas leases executed by the appellant and appellee should be construed together for the purpose of determining the intent of the parties. It cites authority to the effect that where two or more instruments are executed by the same parties contemporaneously or at different times in the course of the same transaction and concern the same subject matter, they are to be construed together if doubt is entertained as to the intent of the parties. Perhaps the rule as presented by appellant is acceptable, but it is not applicable here. There is no ambiguity in the language used. The instruments were not executed by the same parties. The instruments were not contemporaneous since the reservation was made in a deed executed in 1941, the landowner executed his lease on his one-half mineral interest September 15, 1947, the holder of the one-half reserved mineral interest executed its lease on September 17, 1947. There are no facts presented which indicate any concerted or joint action between the lessors, appellee and appellant, at the time the leases were executed.

The shut-in royalty clause contained in the leases was for the sole benefit of the lessee. It is a privilege granted the lessee in lieu of production. It does not purport to convey any estate or rights to anyone else. Neither does it purport to extend the interest of the holders of the mineral rights.

In *Wagner v. Sunray Mid-Continent Oil Co.*, 182 Kan. 81, 318 P. 2d 1039, it is stated:

"The mineral conveyances here involved created a base or determinable fee. It is well settled in this jurisdiction that when a mineral deed has terminated because of failure to produce oil or gas, the court will not extend the term or revive rights which the parties themselves have definitely fixed by their contract (*Kahm v. Arkansas River Gas Co.*, 122 Kan. 786, 253 Pac. 563; *Ratcliff v. Guoinlock*, 136 Kan. 149, 12 P. 2d 798; *Wilson v. Holm*, supra), and when a mineral deed has terminated because of cessation of

production, it is not revived by subsequent production of oil even though it be in the same well (*Wilson v. Holm,* supra)." (pp. 88 and 89.)

The mineral reservation in unequivocal terms, excepted and reserved an undivided one-half interest in the minerals for a term of twenty years from and after May 13, 1939, and "so long thereafter as oil, gas and/or other minerals or any of them are produced therefrom, or the premises are being developed or operated."

The appellant would in effect have us add:

". . . or shut-in royalties are being paid in lieu of production."

This a court cannot do. If the appellant desired such a result it should have inserted the language in the reservation.

The provision in the lease executed by appellant, to which the reversioner was not a party, for payment of shut-in royalty does not constitute an agreement by the reversioner to extend the term of the mineral grant nor make the payment of shut-in royalties the equivalent of production.

In the case of *Berline v. Waldschmidt,* 159 Kan. 585, 156 P. 2d 865, we held:

"Where in an action to extend the term of a mineral deed, which would otherwise expire, for such period as war-time regulations make it unlawful to drill a test well on the land covered by its terms, it appears from an examination of the petition and inferences properly to be drawn therefrom that the happening of the event relied on as the basis for such extension was not provided for by the terms of the instrument, and it further appears that such supervening event was one which could have been reasonably foreseen by the parties and provision made for therein, such petition fails to state facts sufficient to constitute a cause of action and a demurrer thereto was properly sustained." (Syl. ¶ 1.)

The appellant relies heavily on the cases of *Panhandle Eastern Pipe Line Company v. Isaacson,* 255 F. 2d 669, and *McVicker v. Horn, Robinson & Nathan* (Oklahoma) 322 P. 2d 410. Both these cases dealt with mineral rights or leases on land in Oklahoma. The decisions of this court are not in accord with the decisions of the Oklahoma courts on the main question involved in this case. The Federal court made this clear and stated the Kansas rule in *Panhandle Eastern Pipe Line Company v. Isaacson,* supra. It stated:

"Appellants rely heavily on *Home Royalty Ass'n v. Stone,* 10 Cir. 199 F. 2d 650. That case involved a mineral reservation for a fixed term and as long thereafter as minerals are produced. Within the primary term a gas well was completed but no gas was marketed. This court on the authority of

applicable Kansas decisions, held that in order to extend the term there must be actual production as distinguished from exploration and discovery during the primary term. In the later case of *Bristol v. Colorado Oil and Gas Corporation,* supra, this court noted that the Kansas rule had been criticized and declined to follow it in a case involving a lease of Oklahoma land." (p. 673.)

The Kansas rule is in harmony with the rule as announced by the courts of Texas. *Sellers v. Breidenbach,* (Tex. Civ. App.), 300 S. W. 2d 178, states:

". . . The parties could have placed in their royalty deed a shut-in gas well provision, if they had desired to do so, but we find no such provision in this deed. They could have provided that the royalty deed would be continued in effect if a well capable of producing was completed on the premises, if they had so desired, but they did not do so. 'Paying production' does not mean the completion of a well capable of producing, it means a well which is actually producing on the significant date." (p. 179.)

In *Archer County v. Webb,* 326 S. W. 2d 250, affirmed in 161 Texas 210, 338 S. W. 2d 435, the court held that the payment of shut-in gas royalties did not extend the primary term of a royalty deed where the extension clause called for production. See, also, *Holchak v. Clark,* (Tex. Civ. App.), 284 S. W. 2d 399; *Union Producing Company v. Scott,* (Texas), 173 F. Supp. 361, affirmed 267 F. 2d 469, Fifth Circuit (restyled *Scott v. Union Producing Company*), certiorari denied 363 U. S. 842, 4 L. Ed. 2d 1726, 80 S. Ct. 1607, petition for rehearing denied 364 U. S. 855, 5 L. Ed. 2d 78, 81 S. Ct. 32. And see *Holland v. Vela De Pena,* (Tex. Civ. App.), 343 S. W. 2d 750, following *Archer County v. Webb,* supra.

The owner of a defeasance mineral interest cannot change the conditions by which the interest is to continue beyond the primary term, by any provision in an oil and gas lease to which the landowner is not a party.

The payment of shut-in royalty is not the equivalent of "production" or "being developed or operated." As the land was not being produced, developed or operated, the mineral interest was not perpetuated or extended beyond the primary term.

The judgment is affirmed.