(307 P.3d 269)
No. 109,297

LARRY NETAHLA and JANET NETAHLA CURTIS, *Appellants*, v.
MIKE NETAHLA and DEBRA FRANCIS, *Appellees*.

Opinion filed September 6, 2013.

*Robert R. Eisenhauer*, of Johnston Eisenhauer & Eisenhauer, of Pratt, for appellants.

*Josh V.C. Nicolay* and *Gordon B. Stull*, of Stull & Beverlin, LLC, of Pratt, for appellees.

Before PIERRON, P.J., MCANANY and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: Landowners seek a declaratory judgment that a determinable fee mineral interest scheduled to revert to them at such time as oil and/or gas is no longer produced from the land terminated under the deed provisions in 1985. However, the deed conveying the mineral interest incorporated a pre-existing oil and gas lease on the land that deemed the payment of shut-in royalties to be constructive production. Although oil and/or gas was not being produced at the end of the term of the mineral deed, shut-in royalties have been continuously paid. The district court granted summary judgment to the holders of the determinable fee mineral interest on the basis that the definition of production contained in the lease was incorporated into the mineral deed. Landowners appeal. Because we find that the terms of the mineral deed control and the mineral deed was specifically subject to the terms of the lease, production included constructive production, which was defined as the payment of shut-in royalties. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The necessary facts are undisputed.

Larry Netahla and Janet Netahla Curtis are the sole heirs of Joe and Rose Netahla, now deceased (Grantor). Mike Netahla and Debra Francis are the sole heirs of Frank Netahla, now deceased (Grantee).

In 1969, Grantor, as surface landowner, entered into an oil and gas lease on his land where the payment of shut-in royalties extended the primary term of the lease as constructive production. The oil and gas lease covered the South Half of the Northeast Quarter (S/2 NE/4) and the Southeast Quarter (SE/4) in Section 6, Township 34 South, Range 4 West, in Sumner County, Kansas.

A few months later, Grantor entered into a Sale of Oil and Gas Royalty agreement (Mineral Deed) with Grantee covering the

above described land. The interest conveyed to Grantee was "an undivided one-half interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the [above described land]." In addition, the conveyance contained the following language:

"Said land being now under an oil and gas lease executed in favor of, as appears of record, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-half of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease."

Grantee's one-half interest was for a period of 15 years beginning on June 1, 1970, and as long thereafter as oil and/or gas is produced from the land or the land is being developed or operated.

It is uncontroverted by the parties that a well capable of producing oil and/or gas was drilled on the property; however, as of June 1, 1985, the gas well drilled on the property was shut-in, and shut-in royalty payments were paid in order to extend the oil and gas lease beyond the primary term.

Grantor's heirs filed a petition with the district court requesting declaratory relief and asserting that there was no actual production under the oil and gas lease before or after June 1, 1985—the date Grantee's one-half interest was to cease. As such, Grantee's one-half interest had terminated.

Grantee's heirs filed a motion for summary judgment arguing that the one-half interest was subject to the oil and gas lease and because the oil and gas lease allowed for shut-in royalties in order to extend the lease beyond the primary term, the one-half interest had not terminated due to the payment of shut-in royalties. The district court granted the motion, and Grantor's heirs appeal.

## ANALYSIS

Grantor's heirs argue that because the interest in question is a determinable fee mineral interest and because there was no actual production occurring under the oil and gas lease and there was no development or operation on the oil and gas lease, the mineral interest terminated at the end of the 15-year term as set out in the Mineral Deed.

Grantee's heirs do not disagree that the interest is a determinable fee mineral interest; however, they assert that because the Mineral Deed was made *subject* to the already-in-place oil and gas lease, and the lease provided that shut-in royalty payments would extend the lease beyond the primary term through constructive production, then the determinable fee mineral interest was also extended through constructive production under the perpetuation requirements of the Mineral Deed.

Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *David v. Hett*, 293 Kan. 679, 682, 270 P.3d 1102 (2011).

*We are dealing with a determinable fee mineral interest.*

"A deed or other instrument conveying oil and gas in place for a fixed term of years and so long thereafter as oil and/or gas is being produced from the property or the property is being developed or operated creates a base or determinable fee. [Citation omitted.]" *Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, Syl. ¶ 3, 617 P.2d 1255 (1980). Because title to the estate so created vests immediately upon the execution and delivery of such an instrument but remains defeasible in the event of cessation of production, it is also referred to as defeasible fee. See *Wilson v. Holm*, 164 Kan. 229, 234-35, 188 P.2d 899 (1948); 1 Pierce, Kansas Oil and Gas Handbook § 4.03, p. 4-3 (1991) (determinable fee also referred to as defeasible fee).

Again, Grantee's one-half interest was for a period of 15 years beginning on June 1, 1970, and as long thereafter as oil and/or gas was produced from the land or the land was being developed or operated. Therefore, there is no question that the interest in question is a determinable fee.

*In the case of a determinable fee mineral interest, we must look to the instrument creating it to determine the event which perpetuates it.*

"The event which perpetuates the term of the mineral interest must be found in the instrument creating it. [Citation omitted.]" *Classen*, 228 Kan. 426, Syl. ¶ 4. In this case, the Mineral Deed

provides that the Grantee is assigned the rights to the property for "the next 15 years from June 1, 1970 and as long thereafter as oil and/or gas is produced from these premises or the property is being developed or operated."

However, the interest was also made subject to the oil and gas lease already in place, through the following language:

"Said land being now under an oil and gas lease executed in favor of, as appears of record, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-half of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease."

Under the terms of the oil and gas lease, the primary term of the lease can be extended where there is production. Production can either be actual production or constructive production, *i.e.*, payment of shut-in royalties.

"If the grantee wants the ability to perpetuate its interest through means other than 'production,' this must be provided for in the grant . . . ." 1 Pierce, Kansas Oil and Gas Handbook § 4.06, p. 4-5. So the sole issue in this case is whether the grant—the Mineral Deed—provides for the perpetuation of Grantee's interest by incorporating the terms of the lease, which defines "production" to include the payment of shut-in royalties.

*Grantee's interest is perpetuated by the payment of shut-in royalties.*

Grantor relies on our Supreme Court's decision in *Dewell v. Federal Land Bank*, 191 Kan. 258, 380 P.2d 379 (1963), to support his position that in order for constructive production to extend the terms of the grant, it must be specifically stated in the Mineral Deed. In *Dewell*, the court held that the payment of a shut-in royalty was not the equivalent of " 'production' " or " 'being developed or operated' " as those terms were used in the grant document. 191 Kan. at 263. Because minerals were not being produced and the premises were not being developed or operated, the mineral interest was not perpetuated or extended beyond the primary term by the payment of shut-in royalties. 191 Kan. at 263.

But *Dewell* is distinguishable from this case. In *Dewell*, the lease which expressly allowed for shut-in payments was entered into sev-

eral years *after* the conveyance of the determinable fee interest. The court made note of the fact that the instruments were not entered into contemporaneously, which the court implied might have required that they be construed together. 191 Kan. at 261. Here the lease preceded the Mineral Deed and was executed within just a few months of the lease.

Moreover, in *Dewell*, the landowner, who was holder of the reversionary interest, had no interest in the lease and was not a party to the lease. The lease was entered solely by the holder of the determinable fee, who had also been given an executory interest—meaning the determinable fee holder had the express authority to enter into an oil and/or gas lease. The Supreme Court held that "[t]he owner of a defeasance mineral interest cannot change the conditions by which the interest is to continue beyond the primary term, by any provision in an oil and gas lease to which the landowner is not a party." 191 Kan. at 263. Here, the landowner, or Grantor, was a party to both the lease and the Mineral Deed.

Finally, there is no indication in *Dewell* that the mineral deed contained a similar "subject to the terms of the lease" clause. In fact, the Supreme Court noted that there were no facts to indicate any connection between the lease and the mineral deed. 191 Kan. at 261.

Likewise, although our Supreme Court overruled parts of *Dewell* in *Classen*, the parts of the case applicable to these facts are still good law. We note that in *Classen*, like *Dewell*, the mineral deed did not include a "subject to the terms of the lease" clause. The Supreme Court reaffirmed that

"[i]t is the generally accepted rule that, *absent agreement to the contrary*, a term mineral interest cannot be changed or altered by the terms of an oil and gas lease . . . entered into between the term mineral owner and a third party lessee or by the holder of the reversionary interest and a third party lessee." (Emphasis added.) 228 Kan. at 434.

So we return to the language of the Mineral Deed because "[m]ineral deeds are to be construed in accord with the intent and purpose of the parties as gathered from an examination of the entire instrument." *Wilson*, 164 Kan. 229, Syl. ¶ 5.

In this case, the Mineral Deed states:

"Said land being now under an oil and gas lease executed in favor of, as appears of record, *it is understood and agreed that this sale is made subject to the terms of said lease*, but covers and includes one-half of all the oil royalty, and gas rental or royalty due and to be paid *under the terms of said lease*.

"It is understood and agreed that one half of the money rentals which may be paid to extend the term within which a well may be begun *under the terms of said lease* is to be paid to the said Grantee and in the event that the above described lease for any reason becomes cancelled or forfeited then and in that event an undivided one-half of the lease interests and all future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by said Grantee . . . ." (Emphasis added.)

When an extraneous writing is incorporated by reference, it becomes a part of the contract only so far as to effectuate the specific purpose intended. *Starr v. Union Pacific Ry. Co.*, 31 Kan. App. 2d 906, 910, 75 P.3d 266, *rev. denied* 276 Kan. 970 (2003).

Because the Mineral Deed specifically states that it is subject to the terms of the oil and gas lease which was already in effect, and the landowner, or Grantor, was a party to both the lease and the mineral deed which were entered within a few months of each other, we find the parties intended that they be read together. Accordingly, we also find that the definition of "production" within the terms of the oil and gas lease also defines "production" under the Mineral Deed. So "production" can either be actual or constructive production. Because the lease remains in effect through the payment of shut-in royalties, *i.e.*, constructive production, the determinable fee mineral interest created from the Mineral Deed would also extend beyond its primary term through constructive production.

We conclude that the district court did not err when it awarded the heirs of the Grantee summary judgment. The determinable fee has been perpetuated by the payment of shut-in royalties.

Affirmed.