IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,297

LARRY NETAHLA and JANET NETAHLA CURTIS,
*Appellants*,

v.

MIKE NETAHLA and DEBRA FRANCIS,
*Appellees*.

SYLLABUS BY THE COURT

On the facts of this case, a "subject to" clause in a mineral deed referring to a preexisting lease does not extend the term of the deed beyond its original 15 years. The payment of shut-in royalties pursuant to the lease was not the equivalent of actual production or development necessary to perpetuate the deed.

Review of the judgment of the Court of Appeals in 49 Kan. App. 2d 396, 307 P.3d 269 (2013). Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed April 10, 2015. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*Tyson R. Eisenhauer*, of Johnston Eisenhauer & Eisenhauer, LLC, of Pratt, argued the cause and *Robert R. Eisenhauer*, of the same firm, was on the briefs for appellants.

*Gordon B. Stull*, of Stull & Beverlin, LLC, of Pratt, argued the cause, and *Josh V.C. Nicolay*, of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

BEIER, J.: This appeal arises out of a dispute over whether the mineral interest conveyed by a 1970 mineral deed terminated after 15 years, despite its recitation that it

1

was "subject to" a continuing oil and gas lease covering the same property. We hold that the mineral deed terminated and thus reverse the district court and the Court of Appeals.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs-appellants Larry Netahla and Janet Netahla Curtis are the sole heirs of Joe and Rose Netahla, the grantors. Defendants-appellees Mike Netahla and Debra Francis are the sole heirs of Frank Netahla, the grantee.

On November 24, 1969, grantors and Mack Oil Company entered into an oil and gas lease covering the property. The lease stated, in pertinent part:

"2. Subject to the provisions herein contained, this lease shall remain in force for a term of five (5) years from this date (called 'primary term') and as long thereafter as oil, liquid hydrocarbons, gas or other respective constituent products, or any of them, is produced from said land or land with which said land is pooled.

"3. . . . [A]t any time either before or after the expiration of the primary term of this lease, if there is a gas well or wells on the above land . . . and such well or wells are shut in before or after production therefrom, lessee or any assignee hereunder may pay or tender annually at the end of each yearly period during which such gas well or gas wells are shut in, as substitute gas royalty, a sum equal to the amount of delay rentals provided for in this lease for the acreage then held under this lease by the party making such payments or tenders, and if such payments or tenders are made it shall be considered under all provisions of this lease that gas is being produced from the leased premises in paying quantities."

Less than 7 months later, grantors entered into a "Sale of Oil and Gas Royalty," *i.e.*, a mineral deed, covering the same property. They conveyed to grantee:

2

"an undivided one-half interest in and to all of the oil gas and other minerals in and under, and that may be produced from [description of land], together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas, and other minerals and removing the same therefrom, with the right at any time to remove any or all equipment in connection therewith."

The document also contained the following clause, which addressed the existing lease agreement.

"Said land being now under an oil and gas lease executed in favor of, as appears of record, it is understood and agreed that this sale *is made subject to the terms of said lease*, but covers and includes one-half of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that one-half of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in the event that the above described lease for any reason becomes cancelled or forfeited then and in the event an undivided one-half of the lease interests and all future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by the said Grantee Frank Netahla owning one-half of all oil, gas, and other minerals in and under said lands, together with one-half interest in all future events." (Emphasis added.)

The mineral deed concluded with the following limitation on the conveyance:

"TO HAVE AND TO HOLD the above described property, together with all and singular the rights, appurtenance thereto in anywise belonging unto the said Grantee, herein, his heirs and assigns *for a period of the next 15 years from June 1, 1970 and as long thereafter as oil and /or gas is produced from these premises or the property is being developed or operated* and grantors do hereby bind themselves, their heirs, executors and administrators to warrant and forever defend all and singular the said property unto said Grantee herein, his heirs and assigns, against every person

3

whomsoever lawfully claiming or to claim the same or any part thereof, and agree that the Grantee shall have the right at any time to redeem for Grantors by payment, any mortgage, taxes or other items on the above described lands, in the event of default of payment by Grantors, and be subrogated to the rights of the holder thereof." (Emphasis added.)

An affidavit of production was executed on December 3, 1970, stating that a well capable of producing oil or gas had been drilled on the property. The well was later declared a shut-in gas well, and no oil or gas was produced from it from June 1, 1985, until 2003. In 2003, Vess Oil Corporation took over the operation of the lease and began to produce oil or gas from the well.

In August of 2012, plaintiffs filed the declaratory judgment petition underlying this appeal. They sought a declaration that the royalty interest held by defendants had terminated. The district court judge granted the defendants' motion for summary judgment, declaring that the mineral interest remained "in full force and effect."

On appeal, a panel of the Court of Appeals affirmed, concluding:

> "Because the Mineral Deed specifically states that it is subject to the terms of the oil and gas lease which was already in effect, and the landowner, or Grantor, was a party to both the lease and the mineral deed which were entered within a few months of each other, we find the parties intended that they be read together." *Netahla v. Netahla*, 49 Kan. App. 2d 396, 402, 307 P.3d 269 (2013).

The panel further held that "production" as defined in the lease was the same as "production" as defined in the mineral deed; thus "production" could either be actual or constructive. 49 Kan. App. 2d at 402. As a result, "the determinable fee mineral interest created from the Mineral Deed would also extend beyond its primary term through constructive production." 49 Kan. App. 2d at 402.

DISCUSSION

Our review of a district judge's ruling on a motion for summary judgment is "de novo as a question of law, granting no deference to the district court's judgment." *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014). In this case, resolution of the issue requires us to interpret two written instruments, the lease and the mineral deed. "The interpretation and legal effect of a written instrument is a matter of law over which an appellate court exercises unlimited review." *Hamel v. Hamel*, 296 Kan. 1060, Syl. ¶ 2, 299 P.3d 278 (2013).

Defendants argue that "constructive production, via the shut-in provisions of the Lease, . . . perpetuate[s] the Sale of Oil and Gas Royalty's term interest" because the "subject to" clause in the mineral deed incorporates the lease's shut-in royalty provision. Plaintiffs, on the other hand, argue that the "subject to" clause is not an incorporation provision. Rather, the "purpose of the 'subject to' clause is to protect the grantor from breach of warranty."

Generally, "[t]he event which perpetuates the term of the mineral interest must be found in the instrument creating it." *Classen v. Federal Land Bank of Wichita*, 228 Kan. 426, Syl. ¶ 4, 617 P.2d 1255 (1980). "A deed or other instrument conveying oil and gas in place for a fixed term of years and so long thereafter as oil and/or gas is being produced from the property or the property is being developed or operated creates a base or determinable fee." 228 Kan. 426, Syl. ¶ 3.

This court has previously addressed similar language in another mineral deed.

In *Dewell v. Federal Land Bank*, 191 Kan. 258, 258-59, 380 P.2d 379 (1963), the landowner conveyed fee simple title to a tract of land by warranty deed but reserved "an undivided one-half interest in the minerals for a term of twenty years . . . and 'so long thereafter as oil, gas and/or other minerals or any of them are produced therefrom, or the premises are being developed or operated.'" After that conveyance, both the grantor and grantee executed oil and gas leases covering their one-half interest in the land for a primary term of 10 years "with the usual contingency for perpetuation by production, a shut-in royalty clause, and a provision for unitization." 191 Kan. at 259. After the leases had been entered into, a well was completed; an affidavit of production was filed; and then shut-in royalty payments were made by the lessee and accepted by both lessors.

The issue in *Dewell* was whether "the payment of shut-in royalty was the equivalent of 'being produced or developed' as the term is used in the mineral reservation for the purpose of extending the primary term." 191 Kan. at 260. The parties "conceded that the reserved mineral interest would have expired by its terms . . . in the absence of production." 191 Kan. at 260. The *Dewell* grantor contended "that the mineral reservation and the separate oil and gas leases executed by the appellant and appellee should be construed together for the purpose of determining the intent of the parties," citing

> "authority to the effect that where two or more instruments are executed by the same parties contemporaneously or at different times in the course of the same transaction and concern the same subject matter, they are to be construed together if doubt is entertained as to the intent of the parties." 191 Kan. at 261.

This court rejected the argument because "[t]he instruments were not executed by the same parties." 191 Kan. at 261.

6

The court noted that

"[t]he shut-in royalty clause contained in the leases was for the sole benefit of the lessee. It is a privilege granted the lessee in lieu of production. It does not purport to convey any estate or rights to anyone else. Neither does it purport to extend the interest of the holders of the mineral rights." 191 Kan. at 261.

The court also noted that

"'[i]t is well settled in this jurisdiction that when a mineral deed has terminated because of failure to produce oil or gas, the court will not extend the term or revive rights which the parties themselves have definitely fixed by their contract . . . and when a mineral deed has terminated because of cessation of production, it is not revived by subsequent production of oil even though it be in the same well.'" 191 Kan. at 261 (quoting *Wagner v. Sunray Mid-Continent Oil Co.*, 182 Kan. 81, 318 P.2d 1039 [1957]).

The court concluded:

"The owner of a defeasance mineral interest cannot change the conditions by which the interest is to continue beyond the primary term, by any provision in an oil and gas lease to which the landowner is not a party.

"The payment of shut-in royalty is not the equivalent of 'production' or 'being developed or operated.' As the land was not being produced, developed or operated, the mineral interest was not perpetuated or extended beyond the primary term." *Dewell*, 191 Kan. at 263.

The case before us today differs from *Dewell* because the lease here was entered into before the mineral deed, and defendants urge us to rely on this factual distinction to hold that the "subject to" clause in this case did function as an incorporation clause. We

7

decline to do so, finding support in two Texas decisions in circumstances materially identical to those here.

In *Kokernot v. Caldwell*, 231 S.W.2d 528, 528-29 (Tex. Civ. App. 1950), an oil and gas lease conveyed a mineral interest "for a period of five years 'and as long thereafter as oil or gas, or either of them is produced from said land by the lessee.'" After the lease was signed, the owner of the land conveyed an interest in the minerals by mineral deed "for a period of 20 years an undivided one-half interest in and to all of the oil, gas and other minerals, in and under, and that may be produced from the following described land . . . ." 231 S.W.2d at 529. The mineral deed also contained a "subject to" clause, which stated:  "'[I]t is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-half of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.'" 231 S.W.2d at 529. At the end of the 20-year term, a dispute arose over rights to the lease royalties.

The *Kokernot* grantees made several arguments to support a continuation of their royalty interest past the 20-year term.

Their first argument asserted that

> "the mineral rights created and conveyed to them by the amended mineral deed consisted of two separate and distinct estates, first, a one-half mineral estate in the land described . . . for a definite term of 20 years . . . and, second an interest in one-half of the royalty under the . . . lease which exists so long as oil, gas and minerals are produced under said lease according to its terms." 231 S.W.2d at 530-31.

See Williams & Meyers, Manual of Oil and Gas Terms 1088 (15th ed. 2012) (attributing "two-grant theory" to *Hoffman v. Magnolia Petroleum Co.*, 273 S.W. 828 [Tex. Civ.

8

App. 1925], which held "subject to" clause of mineral, royalty deed referring to existing lease may have effect of second grant "so that the grantee will have one interest in production under the existing lease and a different interest in production under future leases").

The grantees also argued that "the reference to the lease in the royalty deed *incorporates in that deed all provisions of the lease*, including the term for which the royalty is to continue." (Emphasis added.) 231 S.W.2d at 530-31.

The *Kokernot* court rejected both of the grantees' "subject to" arguments, holding the mineral interests terminated at the expiration of 20 years. 231 S.W.2d at 532-33. The court noted:

> "The term 'subject to' as used in the mineral deed has a well recognized meaning. 'The words "subject to," used in their ordinary sense, mean "subordinate to," "subservient to" or "limited by." There is nothing in the use of the words "subject to," in their ordinary use, which would even hint at the creation of affirmative rights.' *Englestein v. Mintz*, 345 Ill. 48, 177 N.E. 746, 752. *Shell Oil Co. v. Manley Oil Corporation*, 7 Cir., 124 F.2d 714.

> "'Subject to,' as used in conveyances, is a term of qualification and not of contract. *Cox v. Butts*, 48 Okl. 147, 149 P. 1090; *Consolidated Coal Co. v. Peers*, 166 Ill. 361, 46 N.E. 1105, 38 L.R.A. 624.

> "The last part of the paragraph, '* * *, but covers and includes one-half of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease,' is not a part of the granting clause and there is nothing in the granting clause itself which it could supplement. It was necessary to place this paragraph in the deed in order that appellees would be protected under the general warranty clause; and appellants were entitled (in connection with, and as a part of, the 'subject to' clause) to assure themselves that they would receive their share of the royalty under the lease to which their mineral interest, recited in the granting clause, entitled them." *Kokernot*, 231 S.W.2d at 531.

9

*Investors Royalty Co. v. Childrens Hospital Med. Ctr.*, 364 S.W.2d 779, 780 (Tex. Civ. App. 1963), *writ refused n.r.e.* (May 8, 1963), reached the same result when a lease had been entered into before a mineral deed, and the mineral deed contained a "subject to" clause.

The conveyance in the mineral deed was "for a period of fifteen (15) years from date hereof and as long thereafter as oil, gas or other minerals, or either of them is produced or mined from the lands described herein, in paying or commercial quantities." The lease, in contrast, allowed for the payment of shut-in royalties to be the equivalent of production. Grantor argued that the "production" referred to in the mineral deed was actual production, not the constructive production that is the byproduct of payments of shut-in royalties. The court agreed.

> "When we look to that paragraph, the term royalty deed terminated after fifteen years plus the period of actual production. The shut-in royalty was paid under the terms of the lease, for a period of thirteen months. During that time there was no actual production. As we understand *Archer County v. Webb*, supra, this was not a mere temporary cessation of actual production." *Investors Royalty Co.,* 364 S.W.2d at 78.

The court rejected the grantee's argument that the "subject to" clause conveyed "something more" and relied on *Kokernot* in doing so. *Investors Royalty Co.,* 364 S.W.2d at 78.

Defendants urge us to rely instead on *Cockrell v. Texas Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672 (1956), as an example of a case in which a "subject to" clause was viewed as an incorporation clause. We are unpersuaded by *Cockrell* because its subject conveyances and the issues they gave rise to were substantially different from those before us and from those before the court in the Texas cases discussed above.

10

In *Cockrell*, the owner of a 729.7 acre tract held in fee simple leased the mineral rights to the whole of the land. The lease contained an entirety clause, which stated:

> "'It is further agreed that all the conditions and terms herein shall extend to the heirs, executors, legal representatives, successors in interest and assigns of the parties hereto; but no change of ownership of the land, or part thereof, shall impose any additional obligations or burden on the Lessee, and to that end Lessors hereby covenant for themselves, their heirs, assigns and successors in interest, that in case of any change of ownership of said land, or part thereof, whether by conveyance, will, inheritance, partition or otherwise, *all rentals and royalties accruing hereunder shall be paid to the new owners in proportion to their ownership of the whole of the land hereby leased so that no owner of a segregated part of said land shall be entitled to the whole royalties accruing from developments on said segregated tract, but only to such part of such royalty as the acreage in his tract is to the whole acreage embraced in this lease*; this covenant shall be taken and construed as a covenant running with the land and binding on all successors in interests to Lessors herein."' (Emphasis added.) 157 Tex. at 13.

After the lease was executed, the owner conveyed portions of the mineral and royalty interests until she "owned, subject to the outstanding leases, 1/8th of the mineral fee interest under the west 400 acres of the 729.7 acres and one-half of the mineral fee interest on the east 329.7 acres of the tract." 157 Tex. at 12-13. The owner of the land then conveyed the entire 729.7 acre tract by warranty deed to Gulf Production Company. The owner had, however, expressly reserved "'6 1/2 cents per ton . . . on all sulphur produced and marketed from the West 400 acres'" and "'25 cents per ton . . . on all sulphur produced and marketed from the East 329.7 acres.'" 157 Tex. at 13-14.

The plaintiff in *Cockrell* held all the rights that the owner had reserved in the conveyance to Gulf Production. Sulphur had been produced from the west 400 acres, but the east 329.7 acres had been nonproductive. The disputed question was whether the

plaintiff was entitled to a royalty based on the entirety clause of the lease or based on the reservation clause of the deed.

The court began its analysis by noting that "a deed can pass no greater estate than that owned by the grantor" and "that a warranty deed will pass all of the estate owned by the grantor at the time of conveyance unless there are reservations or exceptions which reduce the estate conveyed." 157 Tex. at 15. It then calculated the royalty interest the owner held in each tract at the time of conveyance to Gulf Production. On the west 400 acres, the owner had conveyed 7/8ths mineral interest and retained 1/8th interest. Based on the ownership of the west tract, the owner was entitled to 3.42606551 cents per long ton produced anywhere on the 729.7 acre tract. On the east 329.7 acres, the owner had retained a 1/2 mineral interest. This entitled her to 11.295737796 cents per long ton produced anywhere on the 729.7 acre tract. The owner's actual royalty interest would therefore be less than that claimed to be reserved in the mineral deed, but the court observed that it was "clear that [owner] and her grantee could not make a contract for royalty payments which would affect the rights of previous purchasers from [owner], not parties to such contract." 157 Tex. at 16.

The court then addressed three references in the mineral deed making its conveyance "subject to" the existing lease. The grantee argued that the purpose of the "subject to" clauses was to protect the owner on her warranty. 157 Tex. at 17. The court rejected this argument, however, because of the particular language relating to the individual "subject to" clauses and the fact that the owner had attempted to reserve a larger royalty interest than she actually owned. 157 Tex. at 17. This allowed the court to give effect to the entirety clause of the lease without completely setting aside the sulfur reservations made in the deed. 157 Tex. at 17.

12

The court concluded:

"Since a 'subject to' clause is a limiting clause, and a qualifying term, *Kokernot v. Caldwell*, supra, the entirety clause of the leases and conveyances referred to [owner's] deed to Gulf Production Company. To hold with the defendants is to hold that a repugnancy exists between the entirety clause in the leases and the reservations in the deed, which results in setting aside the entirety clause. It also is to hold that [owner] reserved in her deed more royalty than she owned at the time of the conveyance. To hold that the entirety clause limited and qualified the sulphur royalty reserved will give effect to all parts of the deed, and will not be a holding that [owner] attempted to reserve more royalty than she owned." *Cockrell*, 157 Tex. at 17-18.

Although the *Cockrell* court ostensibly incorporated the lease into the deed, it did so under circumstances completely distinct from those presented here. And, rather than dealing with the duration of the mineral interest conveyed in a deed, *Cockrell* addressed apportionment of royalty interests, which had been specifically restricted by the lease. The deed in *Cockrell* attempted to reserve for the owner a larger mineral interest in the land than was actually owned, and the court was reluctant to give effect to that reservation because it would affect the rights of third parties whose royalty interests had been determined under the lease.

In light of the caselaw cited above, we hold that the "subject to" clause in the mineral deed here did not incorporate the provisions of the lease. We therefore look only at the provisions of the mineral deed itself to determine whether defendants' mineral interest has terminated.

In *Dewell*, we established that, absent a provision in a mineral deed stating otherwise, the payment of shut-in royalties pursuant to a lease is not the equivalent of actual production or development. Standing alone, the mineral deed at issue here required

13

actual production for its term to perpetuate. Because it is undisputed that there was no actual production as of June 1, 1985, the defendants' mineral interest did not continue past its 15-year term.

CONCLUSION

Under the authorities and the rationale described above, we reverse the decision of the Court of Appeals panel and the judgment of the district court.

JOHNSON, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 109,297 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.